94  519
f110 476

JOHN W. SAGERS v. HAWKEYE INSURANCE COMPANY, Appellant.

Insurance: WAIVER. A fire destroyed all of plaintiff's papers of account except a small day book. Defendant's secretary requested plaintiff to get duplicate bills of his purchases and agreed to send an adjuster, after they should be secured. Plaintiff understood that the duplicate should cover since December, 1892, and defendant, that they should embrace since January, 1892. Plaintiff did procure duplicates covering purchases after December, 1892, and notified the insurer that he would be ready for the adjuster after March 5, 1893. He also, within sixty days after loss, served proof of loss on the soliciting agent of the defendant and mailed a copy to the insurer. The company answered said notification of readiness to receive the adjuster, by an inquiry if it was to be understood that plaintiff would then have duplicate bills since *January* 1, 1892, "according to our understanding," and advised plaintiff that when it was informed that such duplicates were on hand, it would "give the matter the necessary attention." Plaintiff answered, "of course, as you have our understanding regarding the duplicate bills, nothing further need be said in the matter. The proof of loss we sent you, and made service here." The company answered: "Our soliciting agent sends us a paper served on him. We have received a similar paper from sheriff. We decline to accept it as proof of loss as being incomplete and unsatisfactory. Since the loss was reported we have tried to ascertain its amount, and you have wholly failed to give us the information to which we are entitled, and in accordance with our requests. We hold these papers subject to your order. We notify you that only such papers as comply in every respect with the printed conditions of our policy will be accepted as proper proofs of said loss." *Held*, a finding that all proofs of loss except such as the duplicates covering a period since December, 1893, constituted, was waived, will not be interfered with.

SAME. That the policy required assured to produce books of account and other proper vouchers, and permits copies and extracts to be taken therefrom, does not make it his duty to provide such duplicate bills, and thus prevent their furnishing from being a consideration for a waiver.

*Appeal from Jackson District Court.*—HON. P. B. WOLFE, Judge.

THURSDAY, MAY 16, 1895.

Action on a policy of fire insurance. Judgment for plaintiff, and the defendant appealed.—*Affirmed.*

*Geo. R. Sanderson* and *W. C. & F. C. Gregory* for appellant.

*D. A. Wynkoop* and *Wm. Graham* for appellee.

Granger, J.—The plaintiff is the holder of a policy issued by the defendant company on his store building and stock of goods. During the life of the policy there was a total loss of the building and stock, and this action is for a recovery under the policy. After the loss, the defendant's secretary called on the plaintiff with reference to the loss and the books; and as the papers of plaintiff had been destroyed by the fire, except a small daybook, the secretary requested the plaintiff to procure duplicate bills of his purchases, after which an adjuster would be sent to adjust the loss. As to the period for which duplicate bills should be procured, there appears to have been some misunderstanding, appellant's claim being that it was from January 1, 1892, and appellee's being from December 1, 1892. The principal, and we think the only, question on the appeal, is as to the sufficiency of the proofs of loss to justify a recovery. The proofs of loss were served by the sheriff by giving to one J. W. Ellis, in Maquoketa, in Jackson county (who was a local soliciting agent for the defendant), the original, and then by mailing to the company, at Des Moines, Iowa, a copy of the same. The court told the jury that the furnishing of the proofs of loss was essential to a

right of recovery, unless the same had been waived in the way explained in the instructions.   It also told the jury that the giving of a copy of the proofs of loss to the company, instead of the original, was not a compliance with the requirements of either the policy or the statute.   Under such instructions, they being, because of the condition of the record, the law of the case, the right of recovery must depend on the fact of a waiver.   The facts relied on to constitute the waiver are with reference to the procuring of the duplicate bills of purchase, and are indicated by an instruction of the court as follows: "Tenth.   If you believe from the evidence that the plaintiff caused proofs of the loss to be made out, and that the said proofs were duly sworn to by him, and forwarded to the defendant, as he supposed, within a reasonable time after the fire, and inside of sixty days, but that, through mistake, a copy of the affidavit was mailed to and received by the defendant within a reasonable time after the loss, and within sixty days from date of the fire, and that it retained said copy of affidavit of proofs of loss, not returning them to the plaintiff, or making any specific objection to said proofs so furnished, or stating wherein the proofs were not satisfactory to it, and only giving to the plaintiff the general notification that the only papers it will accept are such papers as will comply in every respect with the printed conditions of the policy, and you further find from the evidence that the secretary of the company saw and conversed with the plaintiff, and requested him to procure for defendant's use and inspection duplicates of his purchases, and that, in the same letter in which the defendant says it will only accept such papers as comply with the printed conditions of the policy, it calls the plaintiff's attention in particular to the fact that it

has, since the loss was reported, endeavored to ascertain the amount of the loss, and that the plaintiff has failed to give them the information they are entitled to on that subject, then, and on your so finding, it is for you to say, from all the facts and circumstances in the case, whether or not the plaintiff had a right to rely and believe that the defendant had waived other and different proofs from those received by it, except as to the particular objection made in said letter; and you are instructed, as a matter of law, that the duplicate bills required by it were not necessary or proper parts of the proofs of loss, but were only such as it was authorized to require the plaintiff to furnish under other conditions of its policy."

When the secretary and plaintiff were together, and the request was made to procure the duplicate bills, the request seems to have been agreed to, so as to constitute an agreement that it should be done, but it could not constitute an agreement except in so far as the parties understood the terms alike; that is, if plaintiff only understood that he was to obtain them since December 1, 1892, he was under no obligation to procure them, because of his agreement, to cover a longer period. Appellant contends, however, that the company had a right to demand the production of such bills, and that a failure to produce them is fatal to a recovery.

3    The conclusion is based on a provision of the policy, included in a clause thereof, specifying that in a case of loss the assured should render a particular account, etc., and, "if required, shall produce books of account and other proper vouchers, and permit copies and extracts to be taken therefrom," etc. We do not understand that the provision creates an obligation on the part of the assured to obtain from others duplicate bills, nor to do more than produce such books and vouchers as he may have for inspection, and permit

copies and extracts to be taken from them.   That is
evidently the intent of the provision.   It is likely true
that, when inserted, the governing thought was that,
in the ordinary course of a business like that of plaint-
iff's, the books and vouchers would be in his possession
in case of loss, so that he could produce them.   It would
seem to be a provision intended to require the assured
to aid, by such means as he had or controlled, to ascer-
tain the loss; but nothing in the language seems to
require that he should obtain from others, not under
his control, books or papers for inspection or to be
copied.   It appears that plaintiff procured duplicates
from December 1st to correspond with his understand-
ing, and notified the company that he would be ready
for an adjustment any time after March 5, 1893.   This
notice was given February 26th.   The company
answered the letter with an inquiry if it was to b
understood that plaintiff would then have duplicate
bills of all goods purchased since January 1, 1892,
"according to our understanding."   The letter advised
plaintiff that, when such bills were received, to inform
the company, and it would "give the matter the
necessary attention."   Plaintiff answered the
letter as follows:   "Maquoketa, Iowa, March 17,
1893. W. D. Skinner, Esq., Des Moines, Iowa—Dear Sir:
Your favor of the 13th inst. has been handed to me for
reply.   Of course, as you have our understanding
regarding the duplicate bills, nothing further need be
said in the matter.   The proofs of loss we sent you, and
made service here.   Respectfully, D. A. Wynkoop."   On
the eighteenth of March, 1893, the following letter was
sent by the company:   "Des Moines, Iowa, March 18,
1893.   John W. Sagers, Esq., Iron Hill, Iowa—Dear
Sir:   We are in receipt of a letter from our soliciting
agent, Mr. J. W. Ellis, inclosing a paper bearing date

March 11, 1893, which seems to have been served upon him by the sheriff for you. We have also received from the sheriff a similar paper by registered letter. We desire to inform you that the Hawkeye Insurance Company declines to accept or retain the same as proof of your loss under policy No. 238,699, as being incomplete and unsatisfactory. Since this loss was reported, we have been endeavoring to ascertain the amount of the same, and you have wholly failed to give us the information to which we are entitled, and in accordance with our requests. We hold the papers above referred to subject to your order, and will send them to you or whoever you may desire upon being advised what you want us to do with them. We notify you for your guidance that only such papers as comply in every respect with the printed conditions of our policy will be accepted by us as proper proofs of said loss. We remain, yours, very respectfully, A. Howell, President." It appears that afterward the plaintiff procured the duplicate bills back to January 1, 1892, but never gave any notice of it to the company, and we think that the fact in no way aids the plaintiff, because, if it was done to comply with the request of the company to obtain an adjustment because of it, he must have given notice of it, for in no other way would the company know when to act. But it cannot properly be said from the record that plaintiff was under obligation to procure such bills back of December 1, 1892, unless he had so agreed; and the record does not show such an agreement. Hence we think the fact of waiver depends upon a compliance by plaintiff with the agreement to procure bills back to December 1st, and the understanding of the parties as to the effect of such a compliance; that is, was it to be in lieu of proofs of loss?

The following is an instruction complained of: "Eleventh. If you believe from the evidence that, at

the time the secretary of the defendant called upon the plaintiff, he requested plaintiff to obtain duplicate bills of his purchases since December 1, 1892, and that, when he got them, defendant would send an adjuster to adjust his loss, and that, in compliance with such request, plaintiff procured said duplicate bills, and notified the defendant that he would be ready at a certain time to meet their adjuster, but that, instead of sending an adjuster, the defendant made additional demands upon plaintiff for other and further bills, and that the plaintiff procured said additional bills, and that he had them ready for the defendant's inspection and examination, but that they (defendant) never came or sent any one to examine said bills, on your so finding you will be warranted in finding that the plaintiff has complied with defendant's request in that respect." The complaint as to the instruction is that it "ignores the fact that the whole correspondence shows no notification by the appellee that he got a single bill." The conclusion asserted is not sustained by the record. As we have said, it is true that there was no notice of bills procured or purchases prior to December 1st; but we think, as to purchases after December 1st, the correspondence sufficiently indicated that they were procured. The letter of February 26th informed the company that the plaintiff was ready to meet the adjuster, "in compliance with request" of its secretary. There was but one request, and that was to procure duplicate bills before the adjuster came. This letter was answered as we have indicated, calling attention to the fact that bills should be procured of purchases since January 1, 1892. Plaintiff's reply of March 11, 1892, plainly indicates that he understood that he was to have bills since December 1st. Nothing else could reasonably be inferred from the two letters from plaintiff than that he was ready with bills as he understood he

was to have them. It is true he nowhere states in words, "I have the bills;" but he says in one letter, "I am ready as you requested;" and then, in the next, he states how he understood the request as to the bills to be furnished. It seems to us that these facts are such that the jury could have found that there was a waiver intended as to proofs of loss, when considered with other facts in the case. It probably would not follow as a legal conclusion. The agreement that the bills for some period were to be produced, and then an adjuster was to meet plaintiff to adjust the loss, seems to be conceded. The destruction of the books and papers made it difficult, if not impossible, to make active proof; and it would seem that this absence of data had much to do with the agreement to procure duplicate bills of purchases as a basis of calculation, and there is much to induce a belief that the parties then intended to adjust the loss in that way. As we have said, the obtaining of these duplicate bills of purchase was not a duty owing by the plaintiff under the terms of the policy. It was at the request of the secretary, and upon his promise to send an adjuster. We think few men disinterested would take the undisputed facts and reach a conclusion other than that it was the intention that there need be no proofs of loss or other preparation than the duplicate bills. It will be observed that the instruction No. 11 does not allow a recovery on the facts therein stated, but merely states what will amount to a compliance with "defendant's request." It is nowhere stated in the instruction that a compliance with such request is essential to a recovery, and, even though the instruction may have included facts that are immaterial there is no prejudice because of it; and as we view the case, the facts as to the bills of purchase prior to December 1, 1892, are immaterial,

even though requested, for there was never an agreement to get them as a condition on which an adjuster was to be sent.

II. There is a complaint as to the ninth instruction which treats of a waiver by the company of the original of the proofs of loss, because "that, by mistake, a copy of the affidavit was served on the agent of the defendant, and by such agent mailed to and received by the defendant, instead of the original affidavit," etc. The complaint is that there is no proof of a mistake in sending a copy instead of the original. If conceded, what difference does it make? The waiver in no way depends on the fact of a mistake, as will be seen by our consideration of that question, but on the intent in requesting the bills of purchase. If there is a misuse of the word, it is without the least possible prejudice. If the opposite of the word had been used, the effect in every sense must have been the same. There are some other complaints as to instructions, but they are without merit. The judgment is *affirmed*.