AMERICAN SURETY COMPANY *v.* PAULY (No. 2).

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 169. Argued January 7, 1898. — Decided April 18, 1898.

This was an action upon a bond guaranteeing a national bank against loss by any act of fraud or dishonesty by its president. The bond was similar in its provisions to the one referred to in the case preceding this, and contained among other provisions the following: " Now, therefore, in consideration," etc., . . . " it is hereby declared and agreed, that subject to the provision herein contained, the company shall, within

three months next after notice, accompanied by satisfactory proof of a loss, as hereinafter mentioned, has been given to the company, make good and reimburse to the employer all and any pecuniary loss sustained by the employer of moneys, securities or other personal property in the possession of the employé, or for the possession of which he is responsible, by any act of fraud or dishonesty, on the part of the employé, in connection with the duties of the office or position hereint .fore referred to, or the duties to which in the employer's service he may be subsequently appointed, and occurring during the continuance of this bond, and discovered during said continuance, or within six months thereafter, and within six months from the death or dismissal or retirement of the employé from the service of the employer. It being understood that a written statement of such loss, certified by the duly authorized officer or representative of the employer, and based upon the accounts of the employé, shall be *prima facie* evidence thereof." *Held,*

(1) That this language was susceptible of two constructions, equally reasonable, and that the one most favorable to the insured should be accepted, namely, that the required written statement of loss arising from the fraud or dishonesty of the president of the bank, based upon its accounts, was admissible in evidence, if suit was brought, and was *prima facie* sufficient to establish the loss.

(2) That within the meaning of the bond in suit, the president of the bank remained in its service at least up to the day on which the receiver took possession of books, papers and assets.

The case is stated in the opinion.

Mr. *Henry C. Willcox* and Mr. *Walter D. Davidge* for plaintiff in error. Mr. *Walter D. Davidge, Jr.,* was on their brief.

Mr. *Edward Winslow Paige* for defendant in error.

Mr. Justice Harlan delivered the opinion of the court.

This is an action by the receiver of the California National Bank of San Diego, California, upon a bond given July 1, 1891, by the American Surety Company of New York, to indemnify that banking association against loss by any act of fraud or dishonesty on the part of John W. Collins in connection with the duties of the office or position of president of the above bank, or the duties to which in the employer's (the bank's) service he might be subsequently appointed, and occurring during the continuance of the bond, "and dis-

covered during said continuance or within six months there-
after and within six months from the death or dismissal or
retirement of the employé [Collins] from the service of the
employer."

The bond in this case is similar to the bond of the Surety
Company, of like date, insuring the fidelity and integrity of
George N. O'Brien, as cashier of the bank, and which was
involved in the preceding case of *American Surety Co.* v.
*Pauly* (No. 1), *ante*, 133. With a few exceptions the questions
of law raised by the assignments of error in the present case
are concluded by what was determined in that case.

1. It is contended that the receiver did not comply with
the provision in the bond requiring written notice to the
company "of any act on the part of the employé, which may
involve a loss for which the company is responsible hereunder,
as soon as practicable after the occurrence of such act shall
have come to the knowledge of the employer." The import
of this provision was considered in the former case. The
material inquiry here is whether notice was given to the
company of the acts of fraud and dishonesty on the part of
Collins of which complaint is made as soon as practicable
after the occurrence of such acts came to the knowledge of
the receiver.

The evidence was very conflicting as to the time when the
receiver first became aware of the fraudulent acts of Collins
as president of the bank. The first written notice by the
receiver to the company of any claim under Collins' bond
arising out of fraudulent or dishonest acts on his part was
given May 23, 1892. The terms of that notice appear in
the opinion in the former case. There was evidence tending
to show that, although the receiver had reason in the months
of January, February, March or April, 1892, to believe that
there were irregularities on the part of Collins, as president
of the bank, he did not become aware of any specific acts of
fraud or dishonesty by him until the expert bookkeeper em-
ployed to examine the bank's books informed him a few days
prior to May 23, 1892, that he had discovered false entries
showing fraud and dishonesty on the part of both Collins and

O'Brien. The conflict in the evidence upon the issue as to the time when the receiver first acquired knowledge of the frauds in question was submitted to the jury under instructions to which in our judgment no objection can properly be made. The court instructed the jury that it was incumbent upon the receiver to satisfy them by a fair preponderance of evidence that he notified the company of any act on the part of Collins "likely to involve a loss for which the company might become responsible as soon as practicable after the act came to his knowledge." It said: "Now, it was not incumbent upon the plaintiff to give notice as soon as practicable after he may have had suspicions of dishonest conduct on the part of the president, but it was his duty when he became satisfied that the president had committed some specific act of fraud or dishonesty which was likely to involve the defendant in loss to give notice in writing. This provision does not require that the notice shall be given immediately, but it requires that it shall be given with reasonable promptness after the discovery, and it is a question of fact for the jury to say upon the evidence, in view of the particular circumstances of the case, whether such a notice has been given with reasonable promptness. The notice in this case was given on the 23d day of May, 1892, and it will become necessary for you to inquire and determine when it was that knowledge came to the plaintiff, when he became chargeable with knowledge that the president had committed some specific act of fraud or dishonesty likely to render the defendant liable upon its bond."

Again: "The testimony of Mr. Bloodgood, you will recall, which, if I remember it correctly, is to the effect that he entered upon the investigation of the facts in reference to the president's accounts and the misapplication of funds by him about the first of April, and completed that investigation some time in May, and as soon as he completed it, he then informed the plaintiff of the result. Now, I will charge you, as matter of law in this case, that if the plaintiff had made discovery of any specific act which he believed might render the defendant liable for loss prior to the first day of May,

1892, the notice was not given with reasonable promptness; but if a discovery was not made until after that time, then you can say and decide as a question of fact, whether or not it was given with reasonable promptness, having been given on the 23d day of May."

These instructions were rather more favorable to the Surety Company than were those on the same point in the suit on the bond guaranteeing the fidelity and integrity of the cashier of the bank.

In our judgment, for the reasons stated in the opinion in the former case, it was proper to instruct the jury that the receiver need not have given the required notice on mere suspicion as to acts by Collins involving fraud or dishonesty on his part as president of the bank, but was bound to do so only when satisfied that he had committed some specific act of fraud or dishonesty likely to involve loss to the company. Nor was it error to leave it to the jury to say whether under the proof, and looking at all the circumstances, a notice given May 23d of a loss discovered after May 1st was given with reasonable promptness.

2. It is insisted that the instructions of the trial court in reference to the effect to be given to the written statement of loss made by the receiver were erroneous. The provision in the bond, upon which this contention rests, is in these words: "Now, therefore, in consideration," etc., . . . "it is hereby declared and agreed, that subject to the provision herein contained, the company shall, within three months next after notice, accompanied by satisfactory proof of a loss, as hereinafter mentioned, has been given to the company, make good and reimburse to the employer all and any pecuniary loss sustained by the employer of moneys, securities or other personal property in the possession of the employé, or for the possession of which he is responsible, by any act of fraud, or dishonesty, on the part of the employé, in connection with the duties of the office or position hereinbefore referred to, or the duties to which in the employer's service he may be subsequently appointed, and occurring during the continuance of this bond, and discovered during said continu-

ance, or within six months thereafter, and within six months from the death or dismissal or retirement of the employé from the service of the employer. It being understood that a written statement of such loss, certified by the duly authorized officer or representative of the employer, and based upon the accounts of the employé, shall be *prima facie* evidence thereof."

The court said to the jury : " Now, there is a provision in the policy to the effect that a written statement of loss, certified by the duly authorized officer or representative of the employer (receiver of the bank in this case) and based upon the accounts of the employer, shall be *prima facie* evidence thereof. In view of that condition of the policy, I instruct you that the plaintiff has established a *prima facie* case against the defendant, because he gave the written statement of loss, and subsequently transmitted to the defendant a copy of the account upon which it was based. Nevertheless, the plaintiff has offered additional evidence. He might have rested his case upon the proof that he had complied with this condition of the policy which I have read to you and insisted then that it was incumbent upon the defendant to show that the bank had not sustained a loss within the terms of the policy. But the plaintiff has seen fit to produce further evidence. I am not going to call your attention to that evidence in any detail. Suffice it to say that it tends to prove that on or about the 13th of October the president of the bank procured a discount of certain notes of the bank with the customers' notes belonging to the bank as collateral, to the amount altogether of about $45,000 ; that about that time he sent telegrams in cipher to the cashier of the bank at San Diego ; that about that time the cashier caused a credit to be given in the president's personal account for items amounting to about $45,000 ; that when the bank failed the apparent balance to the credit of the president in his private account was about $11,000, showing that he had drawn out about $34,000 of the $45,000 which had been placed to his credit on the 13th or 14th of October. It is insisted that this evidence authorizes and requires you to find that the president obtained

an improper credit, and by means thereof appropriated more than $25,000 of the funds of the bank.

" I shall not allude to the evidence which has been given of other improper credits which it is alleged were given to the president in his personal account with the bank. They are only important as tending to characterize the nature of the transactions of October 13th and 14th, and as tending to show the total loss sustained by the bank through its president. But the question for you to determine is, whether by reason of these improper credits of the 13th and 14th of October the defendant became liable for a loss within the meaning of the terms of the policy. Was that a fraudulent or dishonest transaction on the part of the president? If it was not, the plaintiff is not entitled to recover. If it was a mere irregularity on his part, an honest irregularity, or if he was not aware of the fact that these credit items were passed to his account, the plaintiff is not entitled to recover. You must find that when he drew this money out he knew, or had reason to believe, that these items had been credited to his account; and you must find that in drawing out the money on those credits he was actuated by a fraudulent or dishonest mind. If, upon the evidence in this case, you can come to the conclusion that he believed that if the directors of the bank had known of these transactions they would have acquiesced and regarded them as entirely satisfactory, why, then it is your duty to find that he was not actuated by a dishonest motive, and therefore his acts in appropriating this money were not fraudulent and dishonest. The burden is upon the plaintiff to satisfy you by a fair preponderance of evidence of the truth of this issue. Fraud is not to be legally presumed, and the law presumes that every man acts honestly until the contrary is shown. On the other hand, fraud or dishonesty is a condition of the mind. It is incapable of direct evidence. It must always be found from circumstance. There is no way in which the plaintiff could show in what state of mind Mr. Collins was while these transactions were taking place, unless he could produce him as a witness on the stand and elicit the truth.

" Well, as I have said before, the plaintiff has made a *primà facie* case upon this issue because he has complied with that condition of the policy which prescribes that the written statement of claim shall be *prima facie* evidence of a loss within the terms of the policy. Now, it is for you to say, upon the other evidence in the case, which has been elicited principally upon the cross-examination of the plaintiff's witnesses, whether the defendant has overcome that case. If you conclude that the defendant has overcome that presumption, and, upon all the evidence before you, that the transactions in controversy are as consistent with the theory of honesty on the part of the president as of his dishonesty or fraud, then the defendant will be entitled to your verdict."

The Surety Company insists that the provisions of the bond referring to the written statement of loss relate exclusively to the presentation of the claim to the company and its acceptance or rejection thereof, and not to the use of such statement as independent evidence in any suit brought for the recovery of such loss; in other words, it is argued, the company was willing in its consideration of the claim of loss to accept as *prima facie* proof of the claim the statement of loss, duly certified and based upon the accounts of the employer, but did not waive its right, if sued, to demand such proof as was necessary in law to sustain it. The bond may be susceptible of this construction. But is it not also susceptible of the construction placed upon it by the trial court? If the Surety Company intended that the written statement of loss certified by the duly authorized officer or representative of the employer, and based upon the accounts of the employer, should be *prima facie* evidence only of the right of the employer to bring suit on the bond if its claim of loss was not paid, it should have so expressly declared. But that was not done. The company agreed to pay any loss covered by the bond within three months next after notice, accompanied by " satisfactory proof of a loss." But that no doubt might arise as to what was satisfactory proof of loss, and that the obligee might be assured of the prompt settlement of any claim it might make under the bond, if accompanied by proper proof of loss,

care was taken to express the understanding that a written statement of such loss, duly certified, "and based upon the accounts of the employer," should be *prima facie* evidence "thereof," that is, *evidence* of "such *loss*." In our judgment, the Circuit Court of Appeals correctly held that the interpretation placed upon the bond by the trial court was the natural one. The company might well have agreed that, in the event of suit, a written statement of loss arising from the fraud or dishonesty of the employé, and "based upon the accounts of the employer," should be sufficient, *nothing appearing to the contrary*, to establish the loss; and this for the reason that such accounts if the claim was disputed and made the subject of suit, would be open to examination by the company. The employer could not base its statement of loss on its own accounts, and then withhold such accounts from inspection by the obligor on the bond.

If the latter construction of the bond be not clearly right, it cannot be said to be inconsistent with its provisions. And it would be going very far to say that the construction given to it by the company was so clearly right that a different construction would be unreasonable or entirely inadmissible. We have then a contract so drawn as to leave room for two constructions of its provisions, either of which, it may be conceded, is reasonable, one favorable to the company, and the other favorable to the bank and most likely to subserve the purposes for which the bond was given. In such a case the terms used must be interpreted most strongly against the party who prepared the bond and delivered it to the party for whose protection it was executed. It has been so held in the case just decided.

3. We have seen that the company agreed to reimburse the bank for loss "by any act of fraud or dishonesty" on the part of Collins as president of the bank in connection with the duties of his office, occurring during the continuance of the bond, and discovered during said continuance or within six months thereafter, *and* within six months from the death or dismissal or retirement of the employé from the service of the employer.

As evidence of the dismissal or retirement of Collins from his position as president of the bank, the company refers to paragraph VI of the original bill of particulars filed by the receiver:

" VI. The following is the date of the dismissal or retirement of said John W. Collins and of the discovery of the acts of fraud or dishonesty referred to as alleged in the ninth paragraph of said complaint:

"' The said J. W. Collins ceased to act as president of the said California National Bank upon the same going into insolvency and coming into the possession of the Comptroller of the Currency of the United States, which took place December 12, 1891; that on the 29th day of December, 1891, Frederick N. Pauly, the plaintiff herein, qualified as the receiver of said bank, and took full possession of its assets under his trust, and that the acts of fraud and dishonesty referred to in paragraph 9 of said complaint were discovered during the months of February and March, 1892.'"

Paragraphs 9, 10 and 11 of the complaint were as follows: " IX. That on or about June 18, 1892, and as soon as practicable after the occurrence of the aforesaid wrongful acts of the said Collins, this plaintiff duly mailed at San Diego, California, in an envelope addressed to the said defendant at its office in the city of New York, a notice, in writing, of the acts of fraud and dishonesty of said Collins, and a written statement of the loss sustained by said bank by reason of the acts of fraud and dishonesty of said Collins, certified by the plaintiff and based upon the accounts of said Collins, and presented satisfactory proofs of the loss sustained by said bank by reason of the acts of said Collins during the continuance of said bond, and duly demanded from this defendant that this defendant make good and reimburse to this plaintiff the sum of twenty-five thousand dollars, the amount of pecuniary loss sustained by said bank by reason of the acts of fraud and dishonesty of said Collins, being the amount conditioned to be paid by the terms of the said guarantee bond heretofore mentioned. X. That the said defendant received each and all of the papers mentioned in paragraph nine of this complaint within at least

ten days after the date of mailing thereof, as alleged in para-
graph nine of this complaint. XI. That the said defendant
has retained in its possession each and all of the papers men-
tioned in paragraph nine of this complaint since the receipt
thereof by said defendant, and has never up to the time of
the commencement of this action objected thereto, either to
this plaintiff or to said bank, as not being sufficient as a
notice or statement of loss or proof of loss, as provided by
the said bond heretofore mentioned, nor has said defendant
raised any objection of any kind or nature whatsoever thereto,
either to this plaintiff or to the said bank." The following
entry appears in the record : " Plaintiff amends his bill of par-
ticulars by omitting all of sixth after first paragraph and
inserting in lieu thereof, that the date of dismissal or retire-
ment was the first of March, 1892 ; that the acts of fraud and
dishonesty referred to in paragraph 9. of said complaint were
discovered between the 1st and 23d of May, 1892 ; and amends
his complaint by striking out paragraphs 10 and 11 and insert-
ing in lieu thereof, that between the 22d day of May, 1892,
and the 18th of June, 1892, and again on the 24th of June,
1892, and as soon as practicable after the discovery of the
aforesaid wrongful acts of the said Collins, this plaintiff duly
notified the defendant in writing at his office in the city of
New York, and on the 24th of June, 1892, and as soon as
practicable after the discovery of said acts, presented to the
defendant a claim in writing for the losses occasioned by such
acts of the said J. W. Collins. And the plaintiff has duly
performed all the acts and things which the employer in and
by said bond was obligated to do ; all of which notices and
claims were received and accepted by the defendant as in all
things sufficient and in time. Plaintiff thereupon duly de-
manded from defendant that it make good and reimburse to
plaintiff the sum of $25,000 and interest towards the amount
of pecuniary loss sustained by said plaintiff by said acts."

Independently of the statement in the receiver's original
bill of particulars, (which, after being filed, was modified as
just stated,) there is no direct evidence in the record that
Collins ceased to be president of the bank by any formal act

on his part.  He died March 3, 1892.  It is true that he does not appear to have performed, or that he attempted to perform, any distinct act as president after the suspension of the bank on November 12, 1891.  We have held, in the other case, that the mere suspension of the bank on November 12, 1891, followed by an investigation of its affairs by a national bank examiner, did not have the effect to retire O'Brien from his position as cashier.  The same rule must be applied in the case of the president of the bank, whose functions were only suspended while the affairs of the bank were being investigated by a national bank examiner.  The Circuit Court of Appeals well said, in support of this view, that if at any time before the receiver took possession on the 29th of December, 1891, the parties interested in the bank had made good its deficit and the bank examiner had restored its assets, no new appointment as president would have been necessary.  In the former case there was evidence showing that O'Brien was, in fact, continued in the service of the receiver until about March 2, 1892, and that he claimed compensation for his services.  On the day last named he left or retired from that service.  There is no evidence in this case that Collins was formally retained by the receiver in his service.  But even if, for that reason it were held that he retired from the service of the employer, when the receiver qualified on December 29, 1892, still the six months from the "retirement of the employé from the service of the employer" would not have expired until June 29, 1892.  It is sufficient in this case to adjudge that Collins, within the meaning of the bond, was in the service of the bank up at least to the date on which the receiver took possession, and that his fraudulent acts were discovered and notice thereof given within six months after that date.  The acts of fraud and dishonesty complained of were discovered a few days prior to May 23, 1892, and notice thereof to the company was given on that day, and was followed by a claim or proof of loss mailed June 24, 1892, and received by the company July 1, 1892.  Such are the facts which the verdict of the jury must be taken to have established.  And if it be further true, as the verdict imports, that

the notice of May 23, 1892, was given as soon as practicable after the occurrence of the alleged fraudulent acts came to the knowledge of the receiver, then the loss was discovered during the continuance of the bond and "within six months from the . . . retirement of the employé from the service of the employer." And if the bond is to be regarded as having expired upon the death of Collins, it also results that the claim of loss was made within the time required.

The objection that error was committed in admitting in evidence Collins' ledger account, and proof of alleged prior frauds, as well as evidence showing the extent of Collins' indebtedness to the bank, is not well taken. The case was fairly tried, and there is no ground for supposing that any error of law was committed by the trial court.

The judgments of the Circuit Court and of the Circuit Court of Appeals are

*Affirmed.*

MR. JUSTICE WHITE, with whom concurred MR. JUSTICE SHIRAS and MR. JUSTICE PECKHAM, dissenting.

The plaintiff in error was surety on a bond guaranteeing the faithful discharge by Collins of his duties as president of the bank. The object of the suit is to enforce the penalty of the bond, on the ground that the president, whose conduct is guaranteed, had been unfaithful, and hence that the surety had become liable.

On the trial of the cause the court instructed the jury that by the terms of the bond the burden of proof was shifted from the plaintiff (the receiver of the bank) to the defendant (the Surety Company), and that the former was entitled to recover against the latter without making any proof whatever of its claim if it had been shown that a proof of loss made in accordance with certain requisites specified in the bond had been transmitted to the Surety Company; that is to say, the jury were instructed that in case a proof of loss in a particular form had been made, its legal effect was to create a rule of evidence to govern in any litigation as to the

bond which might thereafter arise between the parties. The result of this conclusion was to hold that the normal rule by which, in judicial proceedings, the burden is cast on a plaintiff to establish his case was dispensed with, and therefore that the Surety Company, when sued under the contract, was called upon to establish the negative fact that it did not owe, and if it did not do so, a verdict was to be rendered against it. These conclusions of the trial court were affirmed by the Court of Appeals, and upon their correctness the validity of the judgment rendered below necessarily depends.

That there may be no mistake as to what was held by the trial court in its charge to the jury and what was decided by the Court of Appeals in affirming that charge, I excerpt passages from the charge of the trial court and the opinion of the appellate court.

In its charge to the jury the trial court said:

"Now, there is a provision in the policy to the effect that a written statement of loss, certified by the duly authorized officer or representative of the employer (receiver of the bank in this case) and based upon the accounts of the employer shall be *prima facie* evidence thereof. In view of that condition of the policy, I instruct you that the plaintiff has established a *prima facie* case against the defendant, because he gave the written statement of loss, and subsequently transmitted to the defendant a copy of the account upon which it was based.

\*        \*        \*        \*·        \*

"Well, as I have said before, the plaintiff has made a *prima facie* case upon this issue because he has complied with that condition of the policy which prescribes that the written statement of claim shall be *prima facie* evidence of a loss within the terms of the policy. Now, it is for you to say, upon the other evidence in the case, which has been elicited principally upon the cross-examination of the plaintiff's witnesses, whether the defendant has overcome that case. If you conclude that the defendant has overcome that presumption, and, upon all the evidence before you, that the transactions in controversy are as consistent with the theory of honesty on the part of the

president as of his dishonesty or fraud, then the defendant will be entitled to your verdict."

The reasoning of the Court of Appeals, in affirming these instructions, was as follows:

"III. The court charged the jury that the 'plaintiff has established a *prima facie* case against the defendant, because he gave the written statement of loss, and subsequently transmitted to the defendant a copy of the account upon which it was based.' To this and to its repetition, in other words, defendant duly excepted.

"This part of the charge was based upon a provision of the bond which reads as follows: 'It being understood that a written statement of such loss, certified by the duly authorized officer or representative of the employer, and based upon the accounts of the employer, shall be *prima facie* evidence thereof.'

"It is contended that this does not mean that such statement shall be *prima facie* evidence in an action upon the bond; that ' no such contingency was in the minds of the parties;' that it only refers to a consideration by the company of the question whether it will pay without suit; that it only indicates in what way the preliminary proof of a loss shall be made to the company; but neither the phraseology of the clause, nor its collocation with the rest of the bond, thus restricts its meaning. It is certainly open to the construction put upon it by the trial judge; such construction is a most natural one; nor is there anything extraordinary or startling in an agreement by the company that it pay upon proof in a prescribed form being made to it, nor in its agreeing to accept such proof as *prima facie* sufficient to entitle the insured to a recovery in case of default. Conceding that it is also open to a construction which would confine it as plaintiff in error contends, it would be at least ambiguous, and it is elementary law that all obscurities and ambiguities in a policy of insurance are to be resolved against the underwriter who has himself drafted the instrument. There was no error, therefore, in the charge in the particular complained of."

The opinion of this court just announced affirms the correct-

ness of the foregoing propositions; and, because it does so, I am unable to give my assent to it.

The necessary effect of the construction given to the contract is to decide that by its terms the receiver of the bank was entitled to recover on the contract of suretyship for an alleged default of the president, whose fidelity the contract guaranteed, *without making any legal proof whatever of the fact of a loss.*   This consequence inevitably results from holding that, on its being made to appear that the bank had furnished a formal proof of loss under the contract, it was consequently entitled to recover without any proof of its right to do so.   The contract did not require the bank in making the particular form of proof referred to in the bond as acceptable for the consideration of the Surety Company to verify it under oath, nor did it exact that it should be supported by any legal evidence whatever.   Hence, by the contract, the bank could fulfil all the requirements referred to in that instrument as to the particular formal proof alluded to by simply making an unsworn statement to the guarantee company of what it claimed to be due, accompanying that statement with excerpts from the books of the bank.   But as this mere unsworn statement of claim is now held by the court to constitute, in an action which might thereafter be brought to recover upon the bond, affirmative evidence of the liability of the Surety Company, which casts upon the latter the burden of showing that it did not owe, I submit that the ruling now made is exactly what I understand it to be — that is, a decision that under this contract the regular course of judicial proceedings between parties litigant is overthrown and a new rule is introduced, by which, when demand is made against the Surety Company, the person making the demand is relieved from proving the justice of his claim; and, on the contrary, the person against whom it is made, though called in as a defendant, is compelled as such to affirmatively establish the negative fact that it is not liable.   So novel, so extreme, and, as it seems to me, so unjust a result, should not, in my opinion, be maintained unless the terms of the contract unmistakably make that construction necessary.   Instead of

this being the case, I think that not only the letter but the manifest purpose of the contract, as shown by its context, refutes the extreme construction now affixed to it. The provisions of the bond, which are pertinent to the question under consideration, are as follows:

After reciting the parties to the contract, that is, the American Surety Company of New York as party of the first part, Collins, as president of the bank, as party of the second part, and the bank as party of the third part, the bond states the employment of Collins in the capacity of president of the bank, and the application made to the Surety Company to guarantee the faithful performance of his duties. The bond then stipulates as follows:

"Now, therefore, in consideration of the sum of one hundred and twenty-five dollars, lawful money of the United States of America, in hand paid to the company, as a premium for the term of twelve months ending on the first day of July, one thousand eight hundred and ninety-two, at 12 o'clock noon, it is hereby declared and agreed, that subject to the provisions herein contained, the company shall, within three months next after notice, accompanied by satisfactory proof, of a loss, as hereinafter mentioned, has been given to the company, make good and reimburse to the employer all and any pecuniary loss sustained by the employer, of moneys, securities or other personal property in the possession of the employé, or for the possession of which he is responsible, by any act of fraud or dishonesty on the part of the employé, in connection with the duties of the office or position hereinbefore referred to, or the duties to which in the employer's service he may be subsequently appointed, and occurring during the continuance of this bond, and discovered during said continuance, or within six months thereafter, and within six months from the death or dismissal, or retirement of the employé from the service of the employer. It being understood that a written statement of such loss, certified by the duly authorized officer or representative of the employer, and based upon the accounts of the employer, shall be *prima facie* evidence thereof."

It is, I submit, plainly shown by the foregoing language that the Surety Company reserved the right to decline to admit the validity of and to pay without suit any claim made upon the bond, unless notice of the loss was given accompanied by "satisfactory proof" thereof. The words, "satisfactory proof," must have some meaning. But, in reason, the only effect now given to them is that the proof of loss must have been satisfactory to the one who made it; that is, that the parties to the contract meant to say that, whenever the bank was satisfied it had a claim, the fact of its being so satisfied was sufficient to relieve it of all obligation to prove such claim, and to cast upon the Surety Company the duty of showing that the bank was not warranted in asserting a right to recover. The deduction to which the construction thus referred to leads is a conclusive demonstration of its unsoundness. Indeed, if it were the true one, the words "satisfactory proof" have no place in the contract, for it follows that, if the bank preferred a claim under the bond, it would do so because it was satisfied it had a claim, and, therefore, satisfactory proof of a loss under the construction given to it, if it means anything, means only this, that the bank was to be the sole judge of whether a claim existed in its favor, and that this judgment of the bank in advance in its own favor was to be the determinative rule, controlling not only the mind of the guaranty company, but regulating any judicial proceeding which might thereafter arise concerning the obligations created by the contract. But, manifestly, the words, "after notice, accompanied by satisfactory proof, of loss," referred not to the bank by whom the claim was to be made as the person to whom the proof should be satisfactory, but to the Surety Company against whom the claim might be asserted. In other words, the contract plainly declares that the Surety Company only agrees to pay within three months next after notice accompanied by satisfactory proof of loss, that is, by a proof of loss with which it was satisfied. But it is said that, whatever may be the meaning of the particular clause in the contract to which I have just referred, it is controlled by the concluding sentence found in the excerpt which has been made

from the bond.   Between the sentences relating to the satisfactory proof of a loss and that relied upon, the contract contains an enumeration of the character of acts which the bond is intended to guarantee against, and affixes certain limitations of time within which the acts therein referred to must have been discovered.   These stipulations intervening between the one as to satisfactory proof and the one relied upon as modifying or controlling the former, bear no relation to the matter under consideration, and, therefore, may be omitted from view for the purposes of the question in hand.   To test, then, the correctness of the construction now upheld I eliminate these intervening stipulations and bring into juxtaposition the provision as to satisfactory proof and the subsequent language which it is claimed destroys the legal effect of the prior clause.   The contract thus arranged would then read as follows:

"The company shall within three months next after notice, accompanied by satisfactory proof of a loss, as hereinafter mentioned, has been given to the company, make good and reimburse to the employer all and any pecuniary loss sustained by the employer.  .  .  .   It being understood that written statement of such loss certified by the duly authorized officer or representative of the employer and based upon the accounts of the employer shall be *prima facie* evidence thereof."

Construing the whole of this clause, it strikes me that its purport is free from real difficulty.   The first provision reserves a full right to the company to reject a claim provided the proof is not satisfactory to it of the fact of the loss; the second provision stipulates that the company is bound to treat a statement made in a particular form as being presumptive evidence which must be considered by it in arriving at a conclusion as to whether the loss itself was established to its satisfaction.   In other words, the one provision, that of satisfactory proof of a loss, refers to the state of mind of the corporation which is to result from the proof in order that it may admit the validity of the claim without suit; the second relates merely to the form in which a claim may be preferred, and provides that if it is preferred in that form the company

shall be put to a decision as to whether its substantive effect as evidence is satisfactory to it.   Consider also the object of the stipulation.   The ninety days for voluntary payment of the claim could only begin to run after the furnishing of the proof of loss.   The company, however, had a right to pass upon the sufficiency of such proof, not merely as to form, but as to its probative effect, whether it constituted satisfactory evidence of the liability of the Surety Company or not; and in order to exclude all question as to the period when this time should commence, a stipulation was inserted that proof presented in a particular form would be accepted as *prima facie* or presumptive evidence of the fact of a loss.   The stipulation, therefore, that a particular form of proof when furnished to the company should be *prima facie* evidence, did not amount to a declaration by the company that it would also be "satisfactory proof" within the meaning of the previous clause.   To say that it did would be to give to the words "*prima facie*" the meaning of "conclusive."   Can it be doubted that under the contract the company would have had a right to call upon the bank to make a sworn statement or comply with other reasonable requirements, although the bank had made the formal statement referred to?   Clearly not, I submit.   In other words, then, the Surety Company, despite the receipt of the written statement referred to, retained the right to determine whether it satisfactorily proved or established the fact of a loss.   The difference between the two clauses is that which must ever exist between form and substance, and the failure to appreciate this fact is exemplified in the reasoning of the Court of Appeals, where it was declared that the provision as to "satisfactory proof" amounted to an agreement by the Surety Company that it would pay "upon proof in a prescribed form being made to it," and that the stipulation as to the furnishing of a written statement based upon the accounts of the bank was an agreement "to accept such proof as *prima facie* sufficient to entitle the insured to a recovery in case of default."   And the necessary consequence of this ruling was to hold that the right to judge whether there had been a loss under the contract was taken

away from the company, and that it was bound to make a voluntary payment upon the mere unsworn statement of the party making the claim based upon the accounts of the bank, even though, upon investigation, it developed that the accounts of the bank were utterly unreliable and manifestly insufficient as the foundation of a claim.

It being in reason unquestionable that the company only agreed to pay without suit in case the evidence presented to it was satisfactory *as proof*, can it be held that its agreement that a certain form of proof should be treated by it in its consideration of the claim as *prima facie* evidence of the loss, constituted a contract to accept the designated form as proof, having the effect to overthrow the previous express stipulation and as denying the right of the Surety Company to decline to pay without suit if the proof in its opinion did not satisfactorily establish the loss? In other words, that the implied stipulation, that a certain class of proof when tendered to the company for the exercise of its judgment should be treated as sufficient in form, should be construed as meaning that it should be regarded as adequate in substance, and as establishing a right to payment of the loss.

As I have said, it seems to me the two provisions of the bond are harmonious, and are susceptible of a construction which will give a fair and reasonable effect to both. They ought not, therefore, to be so construed as not only to make the one destroy the other, but so as to give a significance to the contract never intended by the parties, and thereby to overthrow the elementary rule governing all judicial proceedings, that is, that upon the one who makes a claim there rests the burden of establishing it.

That the parties did not intend by the contract to create a rule of evidence to govern any suit which might arise on the bond is in addition shown by another and subsequent provision of the contract, wherein it is stated that an action or suit to recover upon the bond shall be barred if not brought within a year from the presentation of the claim. If the purpose of the contracting parties had been to regulate and control subsequent proceedings in the courts growing out of the

contract, the natural place to have expressed that purpose would have been in the clause of the contract treating of actions upon the bond. But no such stipulation is therein found.

It is, of course, unquestioned that many authorities hold that where there is an ambiguity in a contract of insurance a reasonable doubt as to its construction will be resolved in favor of the insured, because the policy is presumed to have been drawn by the officers or agents of the insurer. But granting *arguendo* that this rule applies to a contract of suretyship of the character of that under consideration, I know of no case which pushes the principle to the extent of holding that the express provisions of a contract must be destroyed and thereby a liability be enforced against the insurer, not in harmony with the contract, in conflict with its spirit, in violation of the manifest intention of the parties and productive of great injustice. In other words, that where by the express terms of a contract the insurer agrees to pay without litigation only where the proof of the validity of the claim is satisfactory to him, that it is to be held that because he has declared that in making up his judgment as to whether the evidence is satisfactory he will treat a statement of the loss certified by the claimant as *prima facie* evidence, he thereby renounces his right to form a judgment as to the satisfactory nature of that evidence. Indeed, the doctrine goes not only to the extent of depriving the insurer of his right to pass judgment upon the evidence submitted, but it causes the contract to operate beyond the minds of the contracting parties and to control the judgment of any judicial tribunal subsequently called to pass upon a controversy arising upon the bond. Does not this follow from the fact that it is declared that the stipulation that a statement made by the claimant in a particular form shall be *prima facie* evidence, not only nullifies the provision that the whole proof must be satisfactory to the person against whom the claim is made, but also compels a court to say that although no legal proof whatever under the rules of evidence has been offered at the trial on behalf of the claimant, yet that the liability of

the defendant has been established, and there must be a judgment against him, unless he conclusively shows that no loss had been sustained by the plaintiffs.