SECURITY MUT. LIFE INS. CO. v. ÆTNA INDEMNITY CO.

(Supreme Court, Appellate Division, Third Department.    January 8, 1908.)

1. INSURANCE—EXTENT OF LOSS—INDEMNITY INSURANCE—STATEMENT OF IN-
SURED.

A statement of alleged embezzlements or larcenies of an agency director
delivered to an indemnity company, to the extent that it reflects infor-
mation contained in the books and records of the employer kept in the
regular and ordinary course of its business, is based on "the accounts of
the employer" within a provision of the indemnity bond making such a
statement prima facie evidence of the loss.

2. SAME—ACTION ON INDEMNITY BOND—EVIDENCE—ADMISSIBILITY.

In an action on an indemnity bond for loss due to the embezzlements or
larcenies of an agency director, it appeared that no books were kept in
the office of the director, except a cashbook prepared by a cashier in the
director's employ from check stubs and such other data as he was able to
find.    A witness for plaintiff who investigated the director's office detailed
the situation and conversations had by him with the cashier, and a state-
ment of loss based partly on "data secured" from the cashier was intro-
duced in evidence.    The indemnity company then offered the cashier as a
witness, and sought to give his version of the conversation with plaintiff's
witness.    Held, that the cashier's evidence was erroneously excluded.

Appeal from Trial Term, Broome County.

Action by the Security Mutual Life Insurance Company against the
Ætna Indemnity Company.    From a judgment for plaintiff and an or-
der denying a new trial, defendant appeals.    Reversed, and a new trial
granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCH-
RANE, and SEWELL, JJ.

Lexow, Mackellar & Wells (Martin A. Schenck, of counsel), for
appellant.

Jay Lamont Gregory and Fredric William Jenkins, for respondent.

COCHRANE, J.    Plaintiff is a domestic life insurance corporation,
having its principal office and place of business in the city of Bing-
hamton, in this state.    It brings this action on a bond given by the
defendant to indemnify it against acts of Theodore F. Lake amount-
ing to embezzlement or larceny.    Lake was the agency director of
the plaintiff for the state of Michigan, with headquarters at the city
of Detroit, in said state.    His transactions as such agency director
covered by said bond extended from June to December in the year
1904, when he made default in payments of premiums collected on
policies delivered by him and absconded.    The books and records at
the home office of course disclosed what policies had been sent to
Lake.    Equipped with a transcript of such policies, plaintiff's auditor,
Mr. Jacobs, proceeded to Detroit to make an investigation.    He found
there no books in the office of the company, except what has been
termed a "cash book," and which was prepared by one Williams, a
cashier in the employ of Lake, from check stubs and such data as
he was able to find.    No regular accounts were kept.    The situation
was confused and chaotic.    Jacobs as a witness for plaintiff at the
trial detailed the situation and his conversations with Williams con-

cerning the same. He was there about a week conferring with Williams, with the various subagents of Lake, and with different policy holders. On his return, he prepared, verified, and delivered to the defendant, in accordance with the requirements of the bond, a written statement of the alleged embezzlements or larcenies of Lake, which statement constituted what is characterized in said bond as a "proof of loss." He testified on direct examination that the statement was based on the books and accounts of the company "and data secured in Michigan, in Detroit." Such statement was then received in evidence under a provision in said bond as follows:

"It being understood that a written statement of such loss certified by a duly authorized representative of the employer and based upon the accounts of the employer shall be prima facie evidence thereof."

Jacobs further testified that the information which enabled him to make up such statement came from Williams and agents who had paid money to Lake and from policy holders; that he "merely had Mr. Williams' word and Mr. Williams' written statement for the fact that these premiums had been paid"; that he did not know how Williams prepared the statement, or what his information was when he prepared it, but that he knew there were no records and that it was not prepared from records kept by Lake. That a statement of loss properly prepared and "based upon the accounts of the employer" is prima facie evidence under a provision in a bond like the one above quoted was decided by the Supreme Court of the United States in American Surety Company v. Pauly, 170 U. S. 160, 18 Sup. Ct. 563, 42 L. Ed. 987. This statement in question to the extent that it reflected information contained in the books and records of plaintiff kept in the regular and ordinary course of its business was doubtless based on "the accounts of the company" within the meaning of the bond and prima facie evidence in plaintiff's favor. Whether there is comprehended in the phrase "accounts of the employer" information gleaned as in this case by Jacobs from hearsay declarations of third parties interested to have it appear that they had paid their obligations to Lake is a question which was not raised at the trial by an appropriate exception, and need not now be decided.

But, when plaintiff rested his case, defendant called Williams as a witness, and sought to give his version of his conversations with Jacobs. He testified, as did Jacobs, that they had several conversations. He was then asked to give the first one. This had been specifically detailed by Jacobs on his direct examination, and was the source of his information as to the condition of affairs in Lake's office. An objection to the question was sustained over defendant's exception. Defendant's counsel stated, among other things, that he wished to prove how Jacobs made up his statement. After the first conversation had been excluded, it would have been futile for counsel to persist in offering evidence of the subsequent conversations. That this ruling constituted an error of such a far reaching and vital nature as to demand a new trial cannot be gainsaid. By the method adopted by plaintiff, it had succeeded in getting before the jury Jacobs' version of his conversations and transactions with Williams, and a statement based partly on "data secured" from him. Confessedly

the statement of loss introduced in evidence was fortified and corroborated by information which Jacobs claimed to have procured from Williams, and it was manifestly erroneous to receive in evidence Jacobs' version of his conversations with Williams, and exclude Williams' version of the same conversations.

There are other rulings of a doubtful nature in the exclusion of evidence and in the charge of the court to the jury; but, as they probably will not occur again, we refrain from discussing them.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.