Western Cold Storage Company, Appellee, v. New Amsterdam Casualty Company, Appellant.

Gen. No. 34,802.

Opinion filed June 15, 1931.   Rehearing denied June 25, 1931.

DENT, DOBYNS & FREEMAN, for appellant; LOUIS L. DENT and W. P. GILBERT, of counsel.

STEARNS & JONES, for appellee.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

The plaintiff, Western Cold Storage Company, a corporation, brought its action against New Amsterdam Casualty Company, a corporation, to recover for an alleged breach of an indemnity insurance contract. This insurance contract, commonly known as the Employees' Fidelity Bond, insured the plaintiff against loss arising out of the fraud or dishonesty of its employee John C. Reiber. The trial resulted in a verdict in favor of the plaintiff upon which judgment was entered in the amount of $11,006.94.

The principal point relied upon for a reversal of the judgment is that the plaintiff did not give the defendant notice of its loss in accordance with the terms of the policy within 10 days after the discovery of

said loss. The indemnity contract provided, among other things, that it would pay the plaintiff the amount of any loss which John G. Reiber, who, while in the continuous employ of the plaintiff, directly or by collusion with others, caused to the plaintiff not to exceed $10,000, by reason of any act or fraud or dishonesty on the part of the said Reiber. The contract of indemnity also provided that the employer within 10 days after the discovery of loss, under the contract of indemnity, should notify the surety of the fact and within 90 days thereafter present proof of loss.

From the evidence it appears that the plaintiff was engaged in conducting an egg storage business; that eggs were stored in cans in three forms—yolks, whites and mixed. These cans which weighed approximately 30 pounds each, were stored in lots of 1,000 in plaintiff's warehouse; that at the time when stored the date and amount were recorded on a stock card; that loans were made by the plaintiff on the eggs so stored up to approximately 90 per cent of their value; that upon the storage of the eggs a receipt was issued to the customer. When a loan was desired by a customer, a note was executed for the amount so loaned, which was signed by the customer and the warehouse receipt indorsed as security; that these loans were passed upon and approved either by John Reiber or Charles Krum, the vice president of the plaintiff; that five loans were made by Reiber to Sam Somerman & Company during the year 1927; that the records show that these loans were made upon full 1,000 cans of eggs; that in fact the lots did not contain the full 1,000 cans of eggs as shown by the receipts, vouchers and notes; that the loss suffered by reason of the acts of Reiber amounted to approximately $26,000, growing out of these deals with Somerman & Company. There is testimony in the record by Somerman that he gave Reiber approximately $1,200 in cash and agreed with Reiber to give him one-third of the profits, if any, resulting

from Somerman's transactions on the Chicago Mercantile Exchange.

There is no need to go into the evidence in detail as, in our opinion, there was ample evidence to support the verdict, finding that Reiber had been guilty of fraud in his dealings with Somerman & Company, as a result of which the plaintiff had sustained a loss considerably greater than the amount, upon which the plaintiff was covered by the indemnity policy involved in this proceeding.

January 30, 1928, Reiber left the premises of the company and, at the same time, placed a note upon the desk of Krum, vice president of the plaintiff corporation. In this letter Reiber stated that he was sick and was going home and that he had something very serious upon his mind, although it had come about through no fault of his; that if Somerman should come in and want to make a deal that he was to be "turned down cold." Krum saw Reiber the next day and was told by Reiber that he desired time to get in a more settled condition and that there had been an honest mistake. Krum then began to make an investigation of the books and, on March 28, 1928, a communication was addressed to the defendant company by the plaintiff, through its president, Morton, stating that the company had learned on the day preceding, from a committee appointed by the Chicago Mercantile Exchange, which had been investigating the reported irregularities in the handling of the eggs stored by Somerman & Company, that Reiber had been receiving money from Somerman & Company. In this communication the plaintiff company stated, "Up to yesterday, we believed there was no fraud on Reiber's part in this transaction, but that it was merely a case of disobedience of orders."

From the record it would appear that the first information received by the plaintiff company, to the effect that there was any irregularity in the conduct

of Reiber, was when the note referred to, dated January 30, 1928, was left by Reiber upon the desk of Krum, the vice president of the company. The question is whether this information was such in its character as to apprise the defendant of the fact that the bonded employee, Reiber, was guilty of fraud.

There is a wide distinction between mere suspicion and an actual knowledge of fraud. It would be a poor business policy on the part of a corporation to charge an employee with an act involving the character of an employee which, if untrue, would subject it to an action in libel for damages. Reiber had been in the employ of the plaintiff corporation for a number of years and it was under an obligation not to make any false accusation against him which might blacken his future career. *Perpetual Building & Loan Ass'n v. United States Fidelity & Guarantee Co.*, 118 Iowa 729. The court in its opinion in that case said:

"In a case like this some time may elapse after a well-grounded suspicion before the employer ought, in prudence, to make any charge of fraud or dishonesty. Mere laches or inefficiency in business, consistent with integrity, are not enough. Knowledge of a defalcation frequently depends on a long train of events, or the examination of extended accounts. Discrepancies or irregularities, confirmatory in themselves of guilt, are often explainable, or turn out to be entirely inconsistent with innocence. The confidence of years is not ordinarily shattered in an instant, and the employer may be commendably slow to be convinced of the depravity of the person whom he has implicitly trusted. Unjust inferences and false accusations are always to be avoided. The truth, only after being ascertained with reasonable certainty, can be safely made known. Character is too sacred to permit of tolerating a less liberal rule. It is only of facts which may create a loss for which the surety is responsible—that is, a loss arising from fraud or dishonesty—that immediate

notice is exacted. *Pacific Fire Insurance Co. v. Pacific Surety Co.*, 93 Cal. 7 (28 Pac. Rep. 42); *Aetna Life Insurance Co. v. American Surety Co.* (C. C.), 34 Fed. Rep. 298. As said in *Surety Co. v. Pauly*, 170 U. S. 160 (18 Sup. Ct. Rep. 552, 42 L. Ed. 987), the obligee is bound to give notice 'only when satisfied that he had committed some specific act of fraud or dishonesty likely to involve loss to the association.' Of necessity, resort must be had to the facts of each particular case in determining whether notice was given within the time stipulated. And it is to be borne in mind that the condition relating to notice is not one precedent to the loss, but following it, and pertains more especially to the performance of the contract. *Washburn-Halligan Coffee Co. v. Merchants' Brick Mut. Fire Ins. Co.*, 110 Iowa 423. Such conditions, as they relate to the remedy, are not usually as strictly construed as those involving the essence of the agreement. *Peele v. Society*, 147 Ind. Sup. 543 (44 N. E. Rep. 661)."

An employer is not required to act until he has knowledge of the existence of such facts as would justify a careful and prudent man in charging the employee with wrongdoing. Mere suspicion by the employer is not sufficient. *Outlook Farmers' Elevator Co. v. American Surety Co.*, 70 Mont. 8; *American Surety Co. v. Pauly*, 170 U. S. 133; *Rankin v. United States Fidelity & Guaranty Co.*, 86 Ohio St. 267.

It was a question of fact for the jury as to whether or not the plaintiff notified the defendant of its loss by reason of the dishonesty of its employee Reiber within 10 days after it had such knowledge of the facts as the law required. As has already been pointed out, this knowledge was based upon such facts and circumstances as would justify a reasonably prudent person in making the charge. The jury was properly instructed as to the rule and found that the notice answered the requirements of the policy and we see no

reason for disturbing the judgment because of an insufficient notice.

Objection is made to the fact that Krum, the vice president, when testifying on behalf of the plaintiff, stated that up to the time that he learned of the transaction in question he had never known of any dishonest or fraudulent acts on the part of Reiber. Cases are cited holding that it is error to permit witnesses to give their personal opinion as to the general character of a party litigant. The character of Reiber was not involved in this proceeding. The fact as to whether he had been guilty of fraud was, however, an issue. The testimony of Krum was not for the purpose of placing in evidence the character of Reiber, but for explaining the state of mind of the officers of the plaintiff corporation. It was the purpose of the evidence to negative the question of knowledge on the part of the officers of the company of any knowledge of fraud on the part of Reiber prior to the date stated by the witness in his testimony. It was not necessary that such testimony should have been given because it would have been presumed, unless otherwise shown, that the man's character prior to the commission of the act in question was good. No harm was done by the admission of this testimony.

Objection is urged to the giving of instruction number four on behalf of the plaintiff. This instruction stated a correct abstract proposition of law. It would have been better if it had not been given. The correct proposition of law for the consideration of the jury, however, was stated in defendant's given instructions and we do not believe that the giving of this instruction was error sufficient to warrant the reversal of the cause. *Taylor v. Felsing,* 164 Ill. 331.

Our attention is called to the case of *Sugar v. Marinello,* 260 Ill. App. 85. The instruction in that case left the construction of the contract to the jury. In

the case at bar, however, while the jury by the instruction given was told that such contracts were construed most favorably to the insured, nevertheless, by other instructions, the jury was directly told as to what it was necessary for plaintiff to prove in order to recover.

Courts do not favor the invalidation of indemnity contracts, particularly through breach of conditions subsequent. In the case at bar there is no question but that the plaintiff lost heavily by the actions of its employee Reiber and there is ample evidence to sustain the proposition that his acts were a fraud upon his company and the cause of financial loss to it. Under all the circumstances it would appear that the verdict was fairly rendered and in justice the judgment should be affirmed.

For the reasons stated in this opinion the judgment of the circuit court is affirmed.

*Judgment affirmed.*

Hebel and Friend, JJ., concur.