J. D. LAKE v. FARMERS' INSURANCE COMPANY, Appellant.

**Insurance Adjuster:** AUTHORITY TO WAIVE PROOF OF LOSS.   Where·
insurer employed B. to adjust a loss, writing him to visit assured,
and stating that the policy had the usual three-quarter clause,.
which "will apply to the building as well as the contents if you
make it work.   However, I will leave the matter to you.   Write
me if you can take it in"—B. was authorized to adjust the loss
and hence had authority to waive formal proofs of loss.

POLICY PROHIBITING WAIVER OF PROOF OF LOSS.   That a policy pro-
hibited waiver of proofs of loss, either ·by the adjuster or president
of the company, did not prevent their acts after loss from
amounting to a waiver.

WAIVER OF FORMAL PROOF OF LOSS.  Plaintiff's books and papers were·
destroyed in the fire by which he lost his buildings and merchan-
dise.   Defendant's adjuster told plaintiff to procure duplicate·
bills for a year or eighteen months previous, and when this was
done to notify the company and "he would return and fix the·
matter."   Thereafter, defendant's president wrote their local agent
to call plaintiff's attention to securing "certified copies of bills.
purchased, in the shortest time possible," and as soon as that was
done and the company notified, the president would see "that the
claim receives proper attention," which letter was shown to plain-
tiff.   *Held*, that the adjuster's promise to return and "fix the mat-
ter up," and the president's assurance that the claim should
receive "proper attention" as soon as the duplicate bills were
received, were calculated to induce assured to believe that nothing ·
save their procurement was required of him as a condition to the
adjustment of the loss, and hence formal proofs of loss were·
thereby waived.

**Evidence:** HARMLESS ERROR:   *Insurance*.   In an action on a policy
it was not prejudicial error to require the president of defendant
company to state whether or not he was a stockholder in another
company, and whether his father, who was employed to adjust
the loss in question, was not a stockholder in defendant company,
though such evidence was entirely immaterial.

*Appeal from Harrison District Court.*—HON. F. R. GAY-
NOR, Judge.

THURSDAY, FEBRUARY 1, 1900.

ACTION on insurance policy. The defendant appeals from a judgment rendered against it.—*Affirmed.*

*Deacon & Good* for appellant.

*S. H. Cochran* for appellee.

LADD, J.—One of the policies, issued June 8, 1896, under which the loss occurred December 11th following, covered a building and the merchandise therein, and the other household goods. The loss was entire, except merchandise saved to the agreed value of five hundred dollars. The proofs doubtless would have been more satisfactory, had not the plaintiff's books and papers been destroyed by the fire. They were, under the circumstances, sufficient to sustain the jury's findings of value. The rulings on the admissibility of evidence, except in two instances were so evidently correct that we shall give them no attention. These exceptions were requiring the president of the company to state whether he was a stockholder in the Capital Insurance Company, and whether the father of J. D. Berry was such holder in the defendant. These matters did not have the slightest bearing on the controversy, but could have worked no prejudice. Proofs of loss were not furnished within sixty days, as required by statute, and the question of controlling importance is whether these were waived. The company was promptly informed of the fire, and, as its adjuster was indisposed, employed J. D. Berry to visit the assured and adjust the loss. This appears from the letter of the defendant's president, addressed to Berry, in which, after mentioning the loss, he said: "I enclose papers to you, and will ask, if you can get time to take it in early next week, you may make your arrangements to do so. We have simply acknowledged receipt of the notice of loss, to the agent, F. L. Davis, at Missouri Valley, and the assured, at Loveland. I would suggest that in the settlement you will not need the services of

Davis, in my judgment. * * * I think if he was with you he would be a detriment instead of an aid. We send you two covers, and would suggest that you make two proofs. You will observe the building and stock are reinsured in the St. Paul. We, of course, will have to make proof to them. The policy has the usual three-fourths clause, which, of course, would apply to the building, as well as its contents if you make it work. However, I will leave that matter with you." "Take it in," as used in the letter, evidently meant to adjust the loss. This appears from the reference to the settlement, the agent, and the use of the three-fourths clause suggested. Having power to adjust, that to waive formal proofs of loss was necessarily included. *Ruthven v. Insurance Co.,* 102 Iowa, 563; *Heusinkveld v. Insurance Co.,* 106 Iowa, 229.

II. We now direct our attention to the inquiry as to whether the evidence was such as to sustain the finding of the jury that Berry or the president in fact waived the formal proofs, or extended the time in which to make them. He visited the assured but a few days after the fire, and they agreed on the value of the merchandise saved. He ascertained the dimensions, character, cost, and age of the building, and requested to see the plaintiff's books, bills and invoices. Upon being informed that all save two books, which were produced, had been destroyed, he told the assured to procure duplicate bills a year or eighteen months back, and, when these were gotten, to notify the company, and he would return and fix the matter up. A few days later the local agent, at plaintiff's instance, advised defendant of the difficulty in obtaining duplicate bills, because of many purchases being made with cash. The president of the company, in response, wrote December 18, 1896, that: "Mr. Berry informs me that he made no figures on the building, and made no effort to adjust that at the present; and I would say before the matter is adjusted on building, accurate figures will be made, to determine the actual value of the building, so there need be no controversy

whatever as to the building. As to Mr. Lake being unable
to get his duplicate bills, I would say that I think there is
a mistake about that. My experience of several years in
this line of business has taught me that all reputable houses·
keep an account of all sales, and to whom sold, and a list of
the articles sold, and the mere fact that the goods were paid
for at the time does not change the nature of the case. * * *
If you should see Mr. Lake again, you will call his atten-
tion especially to that part, and suggest that he, in the·
shortest time possible, secure certified copies of the bills pur-
chased. As soon as that has been done, and the company·
has been notified, I will see that the claim receives proper·
attention." This letter was shown the plaintiff. It should.
be added that the policy provides that assured "shall also,
as often as required, produce his books of account and other·
vouchers, and permit extracts and copies thereof to be made,
and shall also furnish certified copies of all bills and invoices·
of the property, the originals of which cannot be found."
In *Sagers v. Insurance Co.*, 94 Iowa, 519, the contract
required the production of books and bills, but not certified
copies thereof, as in this case; and it was held that, as no·
objection had been made to the copy of an affidavit of loss·
furnished by mistake instead of the original, the promise·
to give the loss attention, and send an adjuster when dupli-
cate bills had been procured as agreed, was a waiver of
proofs of loss. Here Berry demanded only what by the·
terms of the policy the assured was bound to furnish, and it·
ought not to be said that, in requesting compliance with one·
of the stipulations of a contract, another was thereby waived.
While the statute makes the furnishing of proofs of loss a·
condition precedent to recovery, it was so agreed in the·
policy. No more was asked than the company might by the·
terms of the contract exact, and, if there was a waiver, it
must arise from Berry's statement that, as soon as the dupli-
cate bills were secured and the company notified, he would·
"fix the matter up," or from the assurance of the president·

that thereupon he would "see that the claim receives proper
attention." The test is whether the acts and conduct of the
insurer are inconsistent with the intention to insist on strict
compliance with the terms of the policy and statute. The
waiver is put on the ground that an insurer whose conduct
is such as to induce the insured to rest under a well-founded
belief that strict performance with a condition will not be
insisted on cannot in good faith afterwards set it up as a
bar to recovery. *Insurance Co. v. Keating,* 86 Md. 130 (63
Am. St. Rep. 599; 38 Atl. Rep. 29). In that case
the promise of the adjuster to send a check after exam-
ining into the loss and the value of the property
destroyed, if the insured understood therefrom that no
proofs of loss would be required, was held to be a
waiver thereof. See *Rathbone v. Insurance Co.,* 31 Conn.
193. On principle, the promise to pay should be as effective
as a waiver of proofs as the denial of liability; for in the
one case, as in the other, furnishing proofs would be but an
idle and useless ceremony. Besides, a promise of settlement
would be inconsistent with insistence on strict compliance
with the conditions of the contract. See *Ruthven v. Insur-
ance Co.,* 102 Iowa, 550; *Insurance Co. v. Erb,* 112 Pa. St.
149 (4 Atl. Rep. 8). In view of the conditions of the policy,
what might the insured reasonably infer from the letter and
Berry's statement? Men of much wider experience than
he would have been led to rest on the assurance that loss
would be adjusted upon the procurement of duplicate bills,
without more. The company should be given large liberty in
the matter of investigating the character of the loss, but,
when this has been done, and a promise to adjust, to deter-
mine what is due, is made, on certain conditions, the insured
has the right to rely thereon; and if he does so, and omits
formal proofs of loss, it does not lie with the insurer to
gainsay the natural results of its conduct. We are of opin-
ion that the letter of the president and the promise of Berry
were well calculated to induce the belief on part of

plaintiff that nothing save the procurement of the duplicate bills was required of him, and whether he so understood, and had the right to think nothing further would be required, was for the determination of the jury.

III. It is asserted, however, that the poicy prohibited such waiver of proofs by either the adjuster or president. In the recent case of *Washburn-Halligan Coffee Co. v. Merchants' Brick Mut. Fire Ins. Co.,* 110 Iowa, 423, it was held that such a condition has no reference to the enforcement of the provisions of a policy after loss.—AFFIRMED.

GRANGER, C. J., not sitting.