## Larrabee, Receiver, *v.* The Title Guaranty and Surety Co., Appellant.

*Principal and surety—Fidelity bond—Duty to discover fraud—Duty to give notice—Judgment, n. o. v.*

1. Where a bond given by the surety company to secure a corporation against loss suffered by reason of the dishonesty of its officials provides that there shall be liability for loss occurring by such dishonesty only if discovered during the term of the bond or within three months thereafter and immediate notice thereof be given to the surety company, the failure to discover the dishonesty of the bonded officials is not excused by the fact that they conspired together to conceal their fraud.

2. Where in such case the bonded officials of the company conspired together during the term of the bond to commit embezzlement, and this was not discovered until after the period named in the bond had expired and no notice thereof was ever given the surety company by the corporation obligee, and subsequently a receiver was appointed for the corporation and he brought suit against the surety for the amount of the loss, and the court below sent the case to the jury, notwithstanding the failure to discover and give notice of the fraud within the time fixed in the bond, on the grounds (1) That there was no person in existence who could bring suit until the receiver was appointed, which was an incorrect assumption, (2) That suit was impossible because of the fraudulent concealment of its liability by defendant, of which there was no evidence and (3) That suit was impossible because of the fraudulent concealment of the fraud by the bonded officials, whose act was to be charged to defendant, the submitting of the case to the jury was error and on appeal judgment was entered for the defendant non obstante veredicto.

Argued Feb. 15, 1915. Appeal, No. 201, Jan. T., 1915, by defendant, from judgment of C. P. Lycoming Co., Sept. T., 1912, No. 290, on verdict for plaintiff, in case of Don M. Larrabee, receiver of the National Pro-

tective Association, v. The Title Guaranty and Surety Company.   Before Brown, C. J., Mestrezat, Elkin, Stewart and Moschzisker, JJ.   Reversed.

Assumpsit on a bond.   Before Whitehead, P. J.
The opinion of the Supreme Court states the facts.
The jury found a verdict as follows:
"December 17th, 1913, we find in favor of the plaintiff for the sum of $23,500.00 with interest from Aug. 21, 1912, the date of bringing this action.   President A. L. Scholl, $5,000; Treasurer J. H. Spencer, $10,000; Secretary Harriet J. Spencer, $5,000; Trustee, Dr. F. L. Moyer, $5,000."

The court entered judgment on the verdict.   Defendant appealed.

*Errors assigned* were various rulings on evidence and various instructions to the jury.

*John E. Cupp,* of *Sprout & Cupp,* with him *Warren, Knapp, O'Malley & Hill,* for appellant.

*N. M. Edwards,* with him *Max L. Mitchell,* for appellee.

Opinion by Mr. Chief Justice Brown, July 3, 1915:
The National Protective Association, a beneficial organization incorporated in 1905, had its principal offices and chief place of business in the City of Williamsport, this State.   In pursuance of an application made by it to The Title Guaranty and Surety Company, that company issued to it on November 15, 1910, a bond to indemnify it against any loss which it might sustain by reason of the fraud or dishonesty of certain officials, termed "employees," amounting to embezzlement or larceny.   No one of the employees was a party to the bond, but they were all named in a schedule attached to it, in

which the extent of the liability of the surety company was fixed for each one of them. That portion of the bond which is material in this controversy is as follows: "Whereas, National Protective Association, hereinafter called 'The Employer' is employing, or intends to employ certain persons in the capacity of president, treasurer, secretary, and trustee, which persons are hereinafter called 'The Employees,' and has filed with the Title Guaranty & Surety Company, hereinafter called 'The Company,' a schedule specifying the amounts of security required for each employee, and the capacity in which each is employed, and has applied to the company for the grant of this bond; and Whereas, The company in consideration of the sum of one hundred six and 75-100 (106.75) dollars, now paid as a premium from November 15, 1909, to November 15, 1910, at 12 o'clock noon, has agreed upon the terms, provisions and conditions herein contained to issue this bond to the employer; and Whereas, The employer has theretofore delivered to the company certain representations and promises relative to the duties and accounts of the employees and other matters, it is hereby understood and agreed that those representations and such promises, and any subsequent representations or promises of the employer, hereafter required by or lodged with the company, shall constitute part of the basis and consideration of the contract hereinafter expressed. Now, therefore, this bond witnesseth, that for the consideration of the premises the company shall, during the term above mentioned, or any subsequent renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next after proof satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said employer, such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of any or either of the employees named upon said schedule, or added thereto as hereinafter provided, in connection with his duties as specified on said sched-

ule, amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term, or of any renewal thereof, and discovered during said continuance, or within three months thereafter, or within three months from the death, or dismissal or retirement of such employees from the service of the employer, within the period of this bond, whichever of these events shall first happen; the company's liability on account of any one employee, in no case to exceed the sum for which he shall have been specifically guaranteed, as hereinafter provided. Provided, That on the discovery of any such fraud or dishonesty as aforesaid on the part of any employee, the employer shall immediately give notice thereof to the company, and that full particulars of any claim made under this bond shall be given in writing, addressed to the company, at its office, in the City of Scranton, Pa., within sixty days after such discovery, as aforesaid, and at any time within three months after the expiration of this bond, the company shall be entitled to call for, at the employer's expense, such reasonable particulars and proofs of the correctness of such claim, and the correctness of the statements made at the time of effecting this bond, or at any subsequent time, as may be required by this company, and to have the said particulars, or any of them, verified by affidavit. And any claims made under this bond, or any renewal thereof, shall embrace only acts and defaults committed during its currency, and within twelve months next before the date of the discovery of the act or default upon which such claim is based, and upon the making of any claim, this bond, as to the employee, whose acts shall have caused such claim to be made, shall wholly cease and determine." No other provision in the bond changes or modifies in any manner the limitation of the surety company's liability to the embezzlement or larceny of an employee committed during the term for which the bond was given, to wit, one year from November 15, 1909, and discovered during said term or within three months

thereafter.    Upon the failure of the insured to discover, during the term of the bond or within three months thereafter, fraud or dishonesty, amounting to embezzlement or larceny, committed by one or more of the bonded officials during the term of the bond, all liability upon the same ceased by its own plain terms, unless some act or fraud on the part of the bonding company estopped it from standing on what was nominated in the bond.

On September 10, 1910, the culmination of a conspiracy on the part of some of the officials of the National Protective Association named in the schedule attached to the bond of indemnity issued to it by the appellant was embezzlement by those officers.    The jury so found upon sufficient evidence, and if this embezzlement, committed during the term of the bond, had been discovered before the end of the year covered by it, or within three months thereafter, and immediately after such discovery notice of the embezzlement had been given by the association to the bonding company, there would have been such compliance by the former with the terms of the bond as to make the latter prima facie liable on the obligation. The National Protective Association never notified the appellant of the embezzlement by its officers.    On December 10, 1910,—nearly a month after the expiration of the year covered by the bond—quo warranto proceedings were instituted against the association, and on July 10, 1911, a judgment of ouster was entered, followed by the appointment on the same day of Don M. Larrabee, the appellee, as receiver.    He entered upon his duties at once and made search for a bond of indemnity which might have been issued to the association to protect it from loss through the defalcation of its officers.    Not finding such a bond, he inquired of various surety companies, among them the appellant, whether they had issued a bond of indemnity to the association, and the reply of the appellant, on February 9, 1912, to a letter of inquiry written by the receiver on the 7th of the same month, was that, from an examination of its card index,

it did not find that any bond had been issued to the National Protective Association.    Subsequently, on April 29, 1912, the appellant wrote to the appellee as follows, in reply to a letter of his written on the 27th of the same month: "We have your further inquiry of the 27th inst., quoting our advices of February 9th, wherein we stated that we had no record of bonds in favor of the National Protective Association, and asking the name and address of any other bonding or title company in this city.    In order to make sure of our position, we made a still further search of our records, and we find that we made an error in so advising you, and which we wish to explain. Our index clerk understood that we wished to know whether or not there were any bonds in favor of the protective association now in force, and inasmuch as the schedule which we formerly carried (and which is hereinafter set forth) expired on November 15th, 1910, the proper search was not made.    We now find that we carried the following schedule bond, written through E. W. Cole, our Williamsport agent: J. H. Spencer, treasurer, $10,000.00; H. J. Spencer, secretary, $5,000.00; A. L. Scholl, president, $5,000.00; F. L. Moyer, trustee, $3,-$500.00; W. C. Moyer, trustee, $3,500.00; H. C. Farringer, trustee, $3,500.00.    This bond was made effective November 15th, 1909, and was written for a period of one year, but was never renewed at its expiration, and after writing several letters, we cancelled the obligation, as the bond expired, by its terms, on November 15th, 1910.    We regret our former misstatement, and trust that the above information may prove of some service."    After the receipt of this letter and some other correspondence with the appellant, in which it denied any liability on the bond, the appellee was authorized on August 17, 1912, to bring suit upon it, the trial of which resulted in a verdict and judgment against the appellant for $23,500.

The foregoing statement of facts is all that is needed for a proper consideration of the fundamental question

of the appellant's liability on its bond, in view of the provisions in it which we have quoted and the failure of the protective association to comply with them.   In appellee's history of the case there is a detailed account, based upon the testimony in the case, of the negotiations which led up to the embezzlement by the bonded officers of the association in September, 1910, but nothing is there found, in addition to the facts to which we have referred, throwing any light upon the real question in the case.

In his charge to the jury the learned trial judge instructed them that, to justify a verdict in favor of the plaintiff, they must find: "First.   That the defendant company actually issued the bond, a copy of which has been filed in this case.   Second.   That the officials named in the schedule attached to said bond embezzled or stole money, or other property, belonging to the said association, and appropriated the same to their use, during the life of this bond, and the sum embezzled or stolen by each. Third.   That at the time of the embezzlement or theft the officials named in said bond, who were guilty of the embezzlement or theft, were acting in the official capacity set out in the schedule."   Under the evidence, the jury could not have helped finding these three facts, but not a word was said to them about the provision in the bond requiring the protective association to give notice to the bonding company, within the term of the bond or within three months after the year had expired, of the embezzlement by the bonded officers during the year covered by the obligation.   This was the main defense of the appellant, and the trial judge was specifically asked to sustain it in the following, which was the first point presented by the defendant: "The plaintiff, or those whom he represents, having neglected and failed to discover fraud and dishonesty, amounting to embezzlement or larceny, practiced by the employees named in the schedule attached to the bond issued by the defendant, and having neglected and failed to discover fraud and dis-

honesty, amounting to embezzlement or larceny, prac-
ticed by any of them, during the continuance of said
bond, or within three months thereafter, or within three
months from the dismissal or retirement of said em-
ployees, or any of them, cannot recover in this action, and
the verdict of the jury must be for the defendant." The
refusal of this point is the thirteenth error assigned.
On the motion for judgment n. o. v. the same reason was
urged by the appellant for denying judgment to the
appellee, but the learned court below gave the following
reasons for excusing the insured's noncompliance with
the provisions of the bond: "a. There was no person in
existence who could bring suit until July 24, 1911, and
after that no person authorized to bring suit until August
17, 1912.   b. Suit was impossible because of the fraudu-
lent concealment of its liability by the defendant.   c.
Suit was impossible because of the fraudulent conceal-
ment of the plaintiff's right of action by the parties
whose honest administration was undertaken by the
bond in suit, and their fraudulent concealment is a
fraudulent concealment of the defendant, because, at
least for the purposes of this suit, they are prin-
cipals and defendant is their surety." These are among
the reasons urged by learned counsel for the appellee
for sustaining the judgment against appellant.   The an-
swer to the first is that the National Protective Associa-
tion, to which the appellant gave its bond, continued its
corporate existence until July 10, 1911, or for more than
four months after three months had expired from No-
vember 15, 1910, the end of the year covered by the bond,
and, during all the interval between the date of the em-
bezzlement and the dissolution of the association, its new
officials, who had succeeded the defaulters, could have
taken the necessary steps to hold the appellant; but none
were taken, and, by the time the receiver was appointed,
all liability on the bond had ceased by its own clear
terms.   If, when the receiver was appointed, the defunct
corporation had no right of action on the bond, none

passed to him.  If the liability of the defendant on it had absolutely ceased, no liability was revived by the appointment of the receiver.  The second reason of the court for excusing noncompliance with the provisions of the bond is that suit was impossible because of the fraudulent concealment by the defendant of its liability. Nothing whatever is to be found in all the testimony taken to justify this statement.  Up to February 15, 1911, the date on which all liability on the bond had ceased through the failure of the National Protective Association to notify the appellant of any embezzlement committed during the term of the bond it had neither said nor done anything in connection with the bond, and, after its liability had ceased on the said date, nothing said or done by it can be tortured into even a semblance of fraud against the association or its receiver. When written to by him, in February, 1912,—long after the termination of its liability—its answer was that it had no record of the bond issued to the National Protective Association.  Can it be seriously said that this was a fraud upon the association or its receiver? Neither it nor he had any conceivable claim under the bond at the time the appellant said it had no record of the obligation;  but, even if this had been a deliberate misstatement, what right in the receiver was affected by it? None; for he had none under the bond at any time from the date of his appointment.  Nothing could be plainer than this.  It is equally clear that the third reason of the court for excusing noncompliance with the terms of the bond cannot be approved.  Suppose the parties for whose honest administration the appellant had become surety did fraudulently conceal a right of action in the association against the appellant; how did such concealment become the act of the appellant?  The bond was given to the association, not to any of its officials; and, if concealed, it was concealed by them, and their act was the act of the association. The bond was not given to secure it from loss that might result from the

concealment of any fact by an employee, but solely from loss resulting from embezzlement or larceny committed during the term of the bond and discovered not later than three months after its expiration.

Learned counsel for appellee frankly admit that no one of our cases sustains the contention that the fraud of the association's dishonest officials was the fraud of the defendant company, estopping it from setting up the terms of the bond as a defense, and we know of no case in any jurisdiction sustaining such contention.   On the contrary, reference may be made to the following as sustaining appellant's defense: Ballard County Bank's Assignee, et al., v. United States Fidelity and Guaranty Company, 150 Ky. 236; Lyons, Receiver, v. Surety Company, 243 Mo. 607; Fidelity & Casualty Company v. Consolidated National Bank, 71 Fed. Rep. 116.   In Lyons, Receiver, v. Surety Company, the bond was given to secure the fidelity of the cashier of the bank, and it was provided that the company should be liable for only such losses as were discovered within the term of the bond, or within six months thereafter, and that notice of loss should be given immediately upon discovery and during the term of the bond, or within six months thereafter.   The alleged losses were not discovered, nor was notice thereof given to the defendant within the time so provided, and, in holding that there could be no recovery upon the bond, what was said is peculiarly applicable to the case now under consideration: "The bond plainly obligates the surety company to make good to the bank any loss sustained by reason of the dishonesty of the cashier during the term of the bond (November 15, 1902, to November 14, 1903,) 'which losses shall be discovered during said term or within six months thereafter, and within six months after the determination of this obligation.'   The term of the bond ended November 14, 1903, and as the discovery of the loss was not made until January, 1906, it is obvious that it was not made during the term of the bond or within six months thereafter.   We

have before us therefore a provision of the bond sued on, clear and unequivocal in its meaning, which under the evidence expressly excludes liability of the obligor, unless there is some extrinsic reason for reaching a different result, not apparent in the evidence or on the face of the bond. It is no answer to say that the cashier, Lewis, fraudulently concealed his dishonesty and thus prevented a discovery within the time fixed by the bond. Dishonesty on the part of a bank official will always be attended with concealment. The fraud of Lewis, in concealing his embezzlements, is no more to be charged to the surety company than to the bank. Indeed, not so much; because by the terms of the bond the duty is imposed on the bank of observing and reporting any misconduct on the part of the cashier. Concealment of fraud may toll the statute of limitations in certain cases, but it is because it is so provided by law. We are not here dealing with that kind of a case. The contract as made by the parties, provides that the surety must pay the loss if discovered within the time stated. There is no liability unless it is so discovered. It is not for the surety company to discover the dishonesty or the loss, but for the bank. This is the contract as made and under which the court must adjudicate the rights of the parties." To the same effect is the case of Fidelity & Casualty Company v. Consolidated National Bank. In that case the cashier falsified his books systematically and carefully, resulting in the failure of the institution to discover the shortage within such time as to enable it to comply with the requirements of the bond, which provided that the surety should not be responsible for default occurring more than twelve months before discovery. In reversing a recovery in the court below Circuit Judge DALLAS, speaking for the Circuit Court of Appeals, said : "Throughout the document, the frauds as to which indemnification is undertaken are so mentioned in connection with the subject of their discovery as to repel the assumption that steps taken for the avoidance

of detection were themselves to be regarded as independent fraudulent acts, the commission of which would have the effect of extending the time allowed for discovery of the primary and principal defaults.   One of the express conditions upon which the bond was issued, when understood as. we think the parties must have understood it, absolutely forbids that assumption.   We refer to the provision that any claim made under the bond should 'embrace and cover only for acts and defaults committed ......within twelve months next before the date of the discovery of the act or default upon which such claim is based.'   What was in the minds of the parties when this condition was agreed to, and what did they understand it to mean?   If, by putting ourselves in their place at the time they contracted, we can arrive at a satisfactory answer to this question, the case before us may be briefly disposed of.   That the officers of the bank which accepted this bond, as well as those of the corporation which issued it, well understood the nature of the hazard to which it relates, may safely be assumed.   They knew that the commission of fraud is generally supplemented by precautions for its concealment, and that the teller of a bank who embezzles its money is very likely to tamper with its accounts to prevent their disclosure of his wrongdoing.   Can it be, then, that they intended that, if timely discovery should be prevented by such means, the prevention so occasioned would itself constitute a distinct basis of claim?   To so interpret the condition would be to render it unavailing in the event of that being done which, as we have said, must have been foreseen, and which, there being no expression to the contrary, must have been regarded as, at least, one of the contingencies which might cause the condition to become operative.   The manifest intent was to create a bar, and to the provision inserted for that purpose there cannot be annexed an exception or qualification not warranted by its terms, and the implication of which the circumstances of the case forbid.   The object was to

preclude liability for a number of defaults, extending over a longer period than one year, and yet the present claim is that, in addition to $5,000, the amount of the embezzlements within such period, the indemnifying company is chargeable with the amount of other embezzlements which had been committed during a prior term. We cannot sustain this demand, because to do so would, as we think, involve a misconstruction of the condition, and the defeat of its purpose."

The first, second and thirteenth assignments of error are sustained, the judgment is reversed and is here entered for the defendant.