L. R. BAIRD, as Receiver of the State Bank of Wolford, North Dakota, a Corporation, Appellant, v. NORTHWESTERN TRUST COMPANY, a Corporation, Respondent.

(— A.L.R. —, 217 N. W. 533.)

**Fidelity bonds — insolvency and closing of bank do not extend time for discovery of losses.**

1. Where a fidelity bond, bonding an employee of a domestic banking corporation, stipulates that such bond shall cover losses sustained during the term of the bond and discovered at any time within six months after the expiration or cancellation thereof, the fact that during the term of such bond the bank becomes insolvent and is closed and no receiver is appointed therefor until after the expiration of the term of the bond, does not extend the time within which discovery must be made six months after the date of the appointment of the receiver.

**Fidelity bonds — permitting notice of claim and filing proof of loss — not a waiver of defense of time limit.**

2. Where a fidelity bond, bonding an employee of a domestic banking corporation, stipulates that such bond shall cover losses sustained during the term of the bond and discovered at any time within six months after the expiration or cancellation thereof, and neither notice of loss given nor proof of claim filed states the time of discovery of the loss, the surety does not waive the right to contest liability under the bond by its conduct in permitting the insured to give notice of claim, file proof of loss and submit the books and records of the bank for examination without advising the insured that it intends to rely upon the terms of the bond requiring loss to be discovered within six months after the date of the expiration or cancellation thereof.

**Banks and banking — rights of receiver in action on fidelity bond.**

3. A receiver of an insolvent and closed bank has no more or greater rights in a suit to recover the penalty under a contract embodied in a fidelity bond in-

suring the fidelity of an employee of the bank than such bank itself would have had in a suit to recover the penalty of the bond.

Opinion filed November 4, 1927. On rehearing February 2, 1928.

Banks and Banking, 7 C. J. § 502 p. 736 n. 70. Fidelity Insurance, 25 C. J. § 3 p. 1091 n. 28; § 7 p. 1096 n. 80; p. 1097 n. 82, 85; § 22 p. 1111 n. 79.

Appeal from the District Court of Ramsey County, *Buttz*, J. Affirmed.

*Traynor & Traynor*, for appellant.

"Contracts of fidelity insurance are subject to the same general rules of construction as apply to other insurance." 25 C. J. 1901; Illinois Surety Co. v. Donaldson (Ala.) 79 So. 667; United States Fidelity & G. Co. v. California Constr. Co. (Ariz.) 186 Pac. 502.

"Courts will construe a contract of insurance liberally, so as to give it effect, rather than to make it void. Conditions which create forfeitures will be construed most strongly against the insurer. Only a stern legal necessity will induce such a construction as will nullify a policy." McNamara v. Dakota F. & M. Ins. Co. (S. D.) 47 N. W. 288.

"As a general rule a forfeiture is waived when an insurer, with knowledge of the act on the part of the insured which works a forfeiture, enters into negotiations with him, and induces him to incur trouble or expense under the belief that his loss will be paid." Beauchamp v. Retail Merchants Asso. 38 N. D. 483, 165 N. W. 545.

"Any right of forfeiture on the part of the insurer by reason of alleged misrepresentations contained in the application may be waived." Western Indemn. Co. v. Free & Accepted Masons (Tex.) 198 S. W. 1092. "The general rule is that a party seeking to rescind must restore, or offer to restore, whatever he has received under the contract."

*Bangs, Hamilton, & Bangs*, for respondent.

"Where the liability of the insurer is thus limited, there is no liability unless the fraud, dishonesty or negligence causing the loss not only occurred but was discovered within the time limit." 25 C. J. 1097 (7).

"The contract as made by the parties provides that the surety must pay the loss if discovered within the time stated. There is no liability

unless it is so discovered. It is not for the surety company to discover the dishonesty or loss, but for the bank. This is the contract under which the court must adjudicate the rights of the parties." Larrabee v. Title Guaranty & Surety Co. L.R.A.1916F, 709, 714, 95 Atl. 416.

"The bond of a compensated surety is not to be so construed, as to extend his liability beyond the terms of the contract which he has made." Pacific County v. Illinois Surety Co. 234 Fed. 97.

"The liability of a paid surety cannot be extended beyond the penalty of the bond." Louisville & N. R. Co. v. United States Fidelity & G. Co. (Tenn.) 148 S. W. 671.

"The fact that a paid surety is regarded as an insurer, rather than a surety does not make it any less obligatory on the part of the beneficiary to perform his part of the contract." Long v. American Surety Co. 23 N. D. 492, 137 N. W. 41.

NUESSLE, J. This action is brought to recover the penalty of a fidelity bond issued by the defendant.

The facts, viewing the record in the light most favorable to the plaintiff, may be stated substantially as follows: The defendant is a corporation engaged in the business of writing surety and fidelity bonds for compensation. The State Bank of Wolford was a domestic banking corporation. In January, 1915, it employed one Sugden as cashier. The defendant bonded Sugden in the amount of $5,000. The term of the bond was from January 9th, 1915, to January 9th, 1916. Later Sugden was made vice-president of the bank. His bond, increased to $10,000 in 1920, was continued from year to year. At the expiration of each annual period the bank made application for a continuation of the bond. Continuation certificates were issued and the premiums therefor paid. The bank's officers in these applications for continuation in each instance made representations as to the employment of Sugden and the condition of his accounts in the bank.

Under the terms of the original bond the defendant agreed to reimburse Sugden's employer "for such pecuniary loss as said employer shall have sustained by reason of any fraud or acts of dishonesty, committed by said employee during the term commencing on the 9th day of January, 1915, at twelve o'clock noon, and ending on the 9th day of January, 1916, at twelve o'clock noon, in the performance of the

duties of the office or position in the service of the employer herein-before referred to as such duties have been, or may hereafter be, stated in writing by the employer to the company and discovered at any time within six months after the expiration or cancellation thereof, or in case of the death, resignation or removal of the employee prior to the expiration or cancellation hereof, within six months after such death, resignation or removal." The bond further provided "that this con-tract may be continued from year to year, at the option of the em-ployer, at the same or on an agreed premium rate, so long as the com-pany shall consent to receive the same; provided, that the liability of the company as surety for the employee to the employer shall not exceed the amount above written, whether loss shall occur during the term of the contract above named, or during any continuation or con-tinuations thereof, or partly during said term and partly during said continuation or continuations." There were also provisions stipulat-ing as to the time within which notice of loss must be given and action to recover be brought, after expiration of the term of the bond and after the time of discovery of loss.

During the year 1921 Sugden misappropriated funds of the bank in an amount much greater than the penalty of the bond. The last continuation of the bond expired on January 9th, 1924. On De-cember 28th, 1923, the bank was declared insolvent and was closed and a representative of the state bank examiner was put in charge. The bank continued in charge of the representative of the examiner until August 23rd, 1924, when it was taken over by the plaintiff as receiver of closed banks. About November 1st, 1924, the defalcations of Sugden were first discovered. Notice of these defalcations was at once given to the defendant and on November 29th proof of loss was filed. The defendant made no objection to the claim on any account at that time and sent its representative, King, to examine the books of the bank. An examination was made and thereupon King stated there was no question of the defalcations of Sugden or of the merits of the claim. The claim, however, was not paid and in February, 1925, the instant action was begun to recover the penalty of the bond.

In his complaint the plaintiff alleged the writing of the bond, the continuations thereof, the defalcations of Sugden, compliance with the requirements of the contract, and asked for judgment in the penalty

of the bond. The defendant, answering, admitted the execution of the bond and the continuations thereof, but denied any defalcations on the part of Sugden committed during the term of the bond, denied that any such were discovered during the term thereof, or within six months after its expiration, and generally denied any liability on the bond. Further, by way of avoidance, plaintiff pleaded false representations on the part of the bank in procuring the various continuations; that any defalcations, if any there were on the part of Sugden, occurred during the year 1921 and not during the year ending January 9th, 1924, and that defalcations occurring during the year 1921, or any other year, were not covered by subsequent continuations; that notice of claim of loss was not given immediately after discovery thereof; that claim of loss was not filed within ninety days from the date of discovery of the defalcations; and further that no claim of loss was filed with the defendant within six months from the expiration of the last continuation of the bond.

On the issues as thus made the case was tried to the court without a jury. The court made findings of fact and conclusions of law and ordered judgment in favor of the defendant. This appeal is from such judgment.

The ground of defense first urged in the court below, and on which the defendant chiefly relied, was that the loss, on account of which the plaintiff seeks to recover, was not discovered until more than six months after the expiration of the last continuation certificate on January 9th, 1924. The trial court based his order for judgment in favor of the defendant on this ground. If the conclusion at which the trial court arrived was correct, it will be unnecessary to consider the other questions raised on this appeal. We will, therefore, first examine the proposition thus presented.

By the terms of the defendant's bond it agreed to reimburse Sugden's employer, the Wolford Bank, for any losses sustained on account of fraud or dishonesty on the part of Sugden during the term of the bond or any continuation thereof and discovered at any time within six months after the expiration or cancellation thereof. Now there is no question but that the last continuation certificate expired on January 9th, 1924. Likewise, there is no question but that the losses resulting from the fraudulent acts of Sugden were not discovered until

November 1st, 1924, or nearly ten months after the expiration of the certificate. In view of these undisputed facts what construction must be put upon the contract as embodied in the bond, and what effect given to the terms thereof?

We think that the rule is as the plaintiff contends, that in cases of this kind the language of the contract is to be construed most strongly against the maker. See Williston on Contracts, § 621 and cases cited. And if such an instrument is susceptible of two constructions, one favorable to the insurer and the other favorable to the insured, the latter construction, if consistent with the objects for which the contract was made, must be adopted. American Surety Co. v. Pauly, 170 U. S. 133, 42 L. ed. 977, 18 Sup. Ct. Rep. 552; 25 C. J. 1091, et seq., and cases cited. In the instant case, however, that portion of the contract involved is plain and unambiguous. There is room for but one construction consistent with the purposes of the contract. The parties could have had no difference of opinion or misunderstanding as to what was intended to be expressed by the language used. It is not the province of the courts to read into a contract something which plainly the parties thereto did not intend to be contained therein. Clearly the parties to this contract intended that the defendant should in no case be responsible for any loss resulting from the acts or misconduct of Sugden, unless such acts or misconduct should be discovered during the period covered by the bond or within six months after its expiration. Such provisions have been uniformly upheld and given effect. See Ballard County Bank v. United States Fidelity & G. Co. 150 Ky. 236, 150 S. W. 1, Ann. Cas. 1914C, 1208, and cases cited; American Surety Co. v. Pauly, supra; 25 C. J. p. 1096, and cases cited.

The plaintiff strenuously contends, however, that even though we might ordinarily thus construe and give effect to the contract here involved, nevertheless, the defendant cannot have the benefit of such a construction in the instant case for the reasons: (1) That the insured bank became insolvent on December 28th, 1923, and the last continuation certificate of the bond in question expired on January 9th, 1924; that upon being declared insolvent the bank was taken in charge by the state banking department and was not turned over to the receiver of closed banks, the present plaintiff, until August 23rd, 1924, and in the interim from the date of the closing of the bank and until the receiver

took it over there was no one in charge of the bank with authority or ability to ascertain and discover whether there had been any losses covered by the bond, and so the period within which discovery might be made under the terms of the bond was thereby extended to six months after August 23d, the date when the receiver took the bank over. (2) That even though the bond had expired on January 9th, 1924, and the six months' period began at that time, nevertheless, the defendant waived the right to rely upon the provisions of the contract with respect to the time of discovery of loss, by its conduct in permitting the plaintiff to give notice of claim, file proof of loss and submit the books and records of the bank for examination without advising the plaintiff that it would rely thereon. (3) That, in any event, the present plaintiff is the receiver of the insured, an insolvent state banking corporation, and by reason of that fact is entitled to greater consideration at the hands of the court with respect to the construction and application of the terms of the contract in question.

It seems to us that there is no possible ground for saying that the period covered by the bond was extended by reason of the insolvency of the bank and the manner in which its affairs were thereafter administered. The bond was explicit in its terms. It covered a definite period. That period expired on a date certain. Any loss to come within the terms of the bond had to be discovered within six months from that date. We do not see how the fact that the banking department took over the bank prior to the expiration of the bonded period can make any difference as regards the terms of the contract or the liability of the surety thereunder. There was no provision in the contract extending the terms thereof in such a contingency, and none can be implied. In this connection see Larrabee v. Title Guaranty & S. Co. 250 Pa. 135, L.R.A.1916F, 709, 95 Atl. 416.

Did the defendant waive the provisions of the contract requiring that loss should be discovered within six months after the expiration of the bond in order to fix liability upon the defendant? We do not think so. Assuming, without deciding, that this provision is one which may be waived by the company, we do not believe that the evidence in this case establishes any waiver. The test of a waiver is whether the words, acts and conduct of the insurer, or all of these taken together, are inconsistent with an intention to insist on a compliance with the

terms of some particular provision or provisions of the insurance contract. Lake v. Farmers' Ins. Co. 110 Iowa, 473, 81 N. W. 710. In the instant case, the proofs of loss did not show when the defalcations of Sugden had been discovered. So far as the proofs of loss are concerned the defendant trust company at the time it sent its representative to examine the books of the bank might well have believed that these losses had been discovered within the six-month period stipulated in the bond, or that the plaintiff claimed that they had been so discovered. It is true that if they had been so discovered it would follow that notice had not been given within the ninety-day period specified in the bond; but the defendant trust company might have been perfectly willing to waive the provision relating to notice and yet have had .no intention of waiving the provision that its liability should be limited to such losses as were actually discovered within six months after the expiration of the bond. And, under the circumstances, sending an accountant to check over the books of the bank did not constitute a waiver by the defendant trust company of the provision restricting its liability to losses discovered within six months after the expiration of the bond. Nor do we believe that any statements made by such representative, while checking the books, as to whether the bank did or did not have a meritorious claim under the bond, is of any controlling effect in the case.

Lastly, the plaintiff contends that as receiver he occupies an exceptional position and that the contract will be construed more favorably in his behalf than it would be in behalf of his insolvent, the original party to the bond. Plaintiff cites in support of this contention the cases of Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903, and Baird v. McMillan, 53 N. D. 257, 41 A.L.R. 177, 205 N. W. 682. We think that neither of these cases will support the plaintiff's position. The Vallely Case was decided on the theory of estoppel. In that case we held that the defendant was estopped to assert as against the receiver the fact that he had received no consideration for a note which he had given to the bank in order to deceive the bank examiner. The McMillan Case deals with a statutory liability and the decision turns upon the construction of a statute. These cases cannot help the plaintiff. Here there is no estoppel and the liability claimed arises from and is defined by contract. The terms of a contract cannot be enlarged

or varied merely because a party thereto has become insolvent and his receiver seeks to recover thereunder. A receiver stands in the shoes of his insolvent with exactly the same rights and obligations that the latter had at the moment of insolvency. And this rule applies as well to banks as to other insolvents. See Gilbertson v. Northern Trust Co. 53 N. D. 502, 42 A.L.R. 1353, 207 N. W. 42.

The judgment of the district court was right and must be affirmed.

BIRDZELL, Ch. J., and BURKE, BURR, and CHRISTIANSON, JJ., concur.

NUESSLE, Ch. J. (On rehearing.) On the petition of the plaintiff a rehearing was ordered. On such rehearing the case was very fully argued on both sides. After a careful examination of the opinion heretofore handed down in the light of this argument, we find no reason for departing from the views therein expressed.

The judgment of the district court is affirmed.

BIRDZELL, CHRISTIANSON, and BURKE, JJ., concur.

BURR, J. (concurring). It is difficult to believe the directors of this bank ever dreamed of entering into a contract where the question of the discovery of a defalcation was to be an integral part of the bond itself and a limitation upon liability. Nevertheless after exhaustive argument, reargument and examination, we are forced to the conclusion this is the language of the bond. "It is so nominated in the bond." A contract is a contract when lawfully entered into. We cannot remake the contract for the bank and reword it in the light of what I believe must have been the understanding of the bank. For this reason I am constrained to concur in the result.