THOMPSON v. AMERICAN SURETY CO. OF NEW YORK et al.

No. 8712.

Circuit Court of Appeals, Eighth Circuit.

July 18, 1930.

Henry A. Morgan, of Albert Lea, Minn. (Morgan & Nichols, of Albert Lea, Minn., on the brief), for appellant.

F. N. Furber, of Minneapolis, Minn. (Fowler, Carlson, Furber & Johnson, of Minneapolis, Minn., and Clark, Byers & Brunk, of Des Moines, Iowa, on the brief), for appellees.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

Appellant, as plaintiff below, brought this action to recover damages, setting up in his complaint four separate alleged causes of action, charging four breaches of the conditions of the bond executed by the defendant Oscar C. Olson as principal and the defendant American Surety Company of New York as surety, by the terms of which the defendants agreed to pay, on conditions set out in the bond, the Citizens' National Bank of Albert Lea, Minn., such pecuniary loss, not exceeding $10,000, as the bank might sustain by reason of certain wrongful acts of the defendant Olson described in the bond. The bond which is made a part of the complaint, contains the following pertinent provisions:

"We, Oscar C. Olson as Principal, hereinafter called the 'Employe,' and the American Surety Company of New York, as Surety, bind ourselves to pay Citizens National Bank, Albert Lea, Minnesota, as Employer, such pecuniary loss; not exceeding Ten Thousand Dollars, as the latter shall have sustained of money or other personal property (including that for which the Employer is responsible), by any act or acts of Fraud, Dishonesty, Forgery, Theft, Embezzlement, Wrongful Abstraction or Wilful Misappropriation on the part of the Employe, directly or through connivance with others, while in any position or at any location in the employ of the Employer; this suretyship to begin March 20th, 1918, and to end, (a) with the date of the discovery by the Employer either of loss hereunder or of dishonesty on the part of the Employe, or (b) with the date of the retirement of the Employe from the service of the employer, or (c) with the date of the termination of the suretyship by the Surety or the Employer in the manner hereinafter set forth in clause 7.

"Provided, However,

"1. That loss be discovered during the continuance of this suretyship or within the fifteen months immediately following the termination thereof, and that notice of such loss be delivered to the Surety at its home office in the City of New York within ten days after such discovery.

"2. That claim, if any, be submitted by the Employer in writing, showing the items and the dates of the losses, and be delivered to the Surety at its home office within three months after such discovery, and that the Surety shall have two months after claim has been presented in which to verify and to make payment. In the meantime no suit, action or proceeding shall be brought against the Surety by the Employer, nor after the expiration of twelve months after the delivery of such statement of claims. In any suit, action or proceeding the Employe shall, if with reasonable diligence he can be found within the jurisdiction, be made a party to the suit and served with process therein.

"3. That in no event shall the liability of the Surety for any one or more defaults of the Employe during any one or more years of this suretyship exceed the amount herein specified. * * *

"7. That this suretyship may be terminated by the surety upon thirty days' notice to the Employer, or by the Employer upon notice in writing to the Surety specifying the date of termination. Thereupon the Surety shall refund the unearned premium if no claim has been paid hereunder."

It is alleged in the complaint that the Citizens' National Bank of Albert Lea was a national banking association, with its principal place of business at Albert Lea, Minn., and that during the month of February, 1927, the Comptroller of the Currency, having determined that the bank was insolvent and unable to pay its debts, appointed the plaintiff as receiver, and that he duly qualified as such receiver in February, 1927, and has ever since been acting as such. That during the times in the complaint mentioned, the defendant Oscar C. Olson was in the employ of the bank as its cashier, and that while so employed, on the 29th of September, 1923, he abstracted, willfully misapplied, took, and kept for himself, and omitted and failed to deliver to the bank, the sum of $400 which belonged to the

bank. That this loss was first discovered by plaintiff during the month of September, 1927, and thereupon plaintiff gave notice to the defendant surety company, as required by the conditions of the bond; that the loss had not been discovered either by the directors of the bank or by any of its officers. As a second breach of the bond, it is similarly charged that in August, 1925, the defendant Olson, while in the employ of the bank as cashier, abstracted, misapplied, and omitted to account to the bank for $2,500 which rightfully belonged to the bank. As a third cause of action, it is similarly alleged that on or about the 5th of January, 1922, the defendant Olson, while in the employ of the bank as cashier, misappropriated $3,000 of the funds of the bank, and as a fourth cause of action it is similarly charged that in the month of October, 1923, the defendant Olson, while in the employ of the bank as cashier, misapplied and appropriated $2,500 of the funds of the bank. It is alleged as to each of these losses that discovery was not made until after the expiration of fifteen months from the termination of the bond; that up to the time of the discovery by the plaintiff these losses had not been discovered either by the directors or officers of the bank, aside from the defendant Olson. To the complaint, and each of the causes of action thereof, the defendants interposed separate demurrers, challenging the sufficiency of the allegations to constitute a cause of action. These demurrers were sustained, and judgment of dismissal was entered thereon, and from this judgment plaintiff has appealed.

It is alleged in the complaint that the bond was continued "in full force and effect continuously from the date thereof until March 20th, 1926, at twelve o'clock noon." By specific provisions of this bond, the liability thereunder was limited to such loss as might be discovered during the continuance of the suretyship, or within fifteen months immediately following the termination thereof. It appears from the allegations of the complaint that the losses occurred between the date of the execution of the bond and its termination, but that none of these losses were discovered, either during the continuance of the suretyship, nor within the fifteen months immediately following its termination. There seems to be no ambiguity in the terms of this contract, and, hence, there is no occasion to invoke rules for its construction. The provisions are specific, and the parties had a right so to contract. The liability was plainly limited to such losses as might be dis-

covered within the time specified. The parties were sui juris; hence, capable of contracting, and they saw fit to contract for a limited liability. The liability is in no way dependent upon the exercise of diligence in discovering losses, and to read such a provision or condition into the contract would amount to making a new contract for the parties. Similar provisions in insurance and indemnity contracts have been upheld by the previous decisions of this court. United States Fidelity & Guaranty Company v. Rice (C. C. A.) 148 F. 206, 208; New Amsterdam Casualty Company v. Central National Fire Ins. Co. (C. C. A.) 4 F.(2d) 203; St. Louis Architectural Iron Company v. New Amsterdam Casualty Company (C. C. A.) 40 F. (2d) 344; Clements v. Preferred Accident Insurance Company of New York (C. C. A.) 41 F.(2d) 470; Commercial Casualty Company v. Fruin-Colnon Contracting Company (C. C. A.) 32 F.(2d) 425; Lombard Investment Company v. American Surety Company (C. C.) 65 F. 476.

In United States Fidelity & Guaranty Company v. Rice, supra, this court considered a provision in a bond given by a contractor for the construction of a building, to the effect that no liability should attach to the surety unless it should receive notice from the owner of any default on the part of the contractor promptly on knowledge thereof by the owner, and, in any event, not later than thirty days after any such default. In the course of the opinion it is said:

"The parties, by clear and unambiguous language, contracted that no liability should attach to the surety company unless it received notice of any default on the part of the contractor promptly upon knowledge thereof by the owner, and, in any event, not later than 30 days after any such default to the end that it might avail itself, if it desired, of the opportunities furnished by the bond for protecting itself. We think that stipulation of the contract was as binding upon the owner as the obligation to pay was upon the surety company. * * * But whether it was reasonable or not is of no consequence. The parties were sui juris, capable of making their own contracts and undertook to do so, and whatever they clearly and distinctly agreed upon is binding upon them."

In the case of Fidelity & Casualty Co. of New York v. Consolidated National Bank, 71 F. 116, 119, the Circuit Court of Appeals of the Third Circuit considered the conditions of an employee's bond given to indemnify against loss by reason of fraud or dishonesty.

The bond contained a provision that any claim under the bond should embrace and cover only acts and default committed within twelve months of the date of their discovery. That court held that a default committed more than twelve months prior to its discovery, and which would have been discovered within the twelve months, had discovery not been prevented by acts of the employee in falsifying the books, was, nevertheless, not covered by the bond. It was argued in that case that a liability should have been upheld because the failure to discover the loss was due to the fraud of the employee against whose acts the indemnity was given. Referring to this contention, the court said:

"Throughout the document, the frauds as to which indemnification is undertaken are so mentioned in connection with the subject of their discovery as to repel the assumption that steps taken for the avoidance of detection were themselves to be regarded as independent fraudulent acts, the commission of which would have the effect of extending the time allowed for discovery of the primary and principal defaults. One of the express conditions upon which the bond was issued, when understood as we think the parties must have understood it, absolutely forbids that assumption. We refer to the provision that any claim made under the bond should 'embrace and cover only for acts and defaults committed * * * within 12 months next before the date of the discovery of the act or default upon which such claim is based.' * * * Can it be, then, that they intended that, if timely discovery should be prevented by such means, the prevention so occasioned would itself constitute a distinct basis of claim? To so interpret the condition would be to render it unavailing in the event of that being done which, as we have said, must have been foreseen, and which, there being no expression to the contrary, must have been regarded as, at least, one of the contingencies which might cause the condition to become operative. The manifest intent was to create a bar, and to the provision inserted for that purpose there cannot be annexed an exception or qualification not warranted by its terms, and the implication of which the circumstances of the case forbid."

■ In the instant case, there is no claim that any acts of Olson prevented a discovery of the loss, but it is argued that, because the loss was not discovered, and that due diligence was exercised by the plaintiff and the officers and directors of the bank, other than Olson, this in effect extended the limitation in the bond. Under the plain provisions of this contract there was no liability unless the loss not only occurred within the coverage of the bond, but was discovered within the time limited.

■ It is finally argued that this provision of the contract was in effect suspended by the appointment of a receiver for the bank, after the termination of the bond. It is alleged that, up to the time of the appointment of the receiver, the losses had not been discovered and that they were not apparent on the face of the books and records of the bank. That the receiver, upon his appointment, diligently investigated the affairs of the bank and that, as a result of this investigation, the discoveries of loss were made. We have already observed that the action is based upon contract, and no provision can be read into this contract extending the liability to losses not discovered within the period limited thereby. When the bank became insolvent and the receiver took over its assets, he took only the assets, property, and rights which the bank had. The question was before the Supreme Court of North Dakota in Baird v. Northwestern Trust Co., 56 N. D. 398, 217 N. W. 538, 541, 56 A. L. R. 1257. In the course of the opinion in that case, the court said:

"It seems to us that there is no possible ground for saying that the period covered by the bond was extended by reason of the insolvency of the bank and the manner in which its affairs were thereafter administered. The bond was explicit in its terms. It covered a definite period. That period expired on a date certain. Any loss to come within the terms of the bond had to be discovered within six months from that date. We do not see how the fact that the banking department took over the bank prior to the expiration of the bonded period can make any difference as regards the terms of the contract or the liability of the surety thereunder. There was no provision in the contract extending the terms thereof in such a contingency, and none can be implied. In this connection see Larrabee, Receiver v. Title Guaranty & Surety Co., 250 Pa. 135, 95 A. 416, L. R. A. 1916F, 709."

■ It is finally contended that the complaint at least stated a cause of action against the defendant Olson, because the loss was directly charged to have been caused by his wrongful acts. The action, however, is one upon contract and not in tort. Even the contract is joint and not joint and several. There being no right of recovery on the contract, it is not material that there may have been a cause

of action against the defendant Olson for his tort. It will be proper to consider that question if and when such an action is brought against him. None of the losses having been discovered during the continuance of the suretyship, nor within fifteen months immediately following its termination, it follows that no cause of action was stated in the complaint, and the court properly sustained the demurrers thereto.

The judgment of the lower court is therefore affirmed.