### FIDELITY & CASUALTY CO. OF NEW YORK v. HOYLE et al.
#### No. 3431.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1933.

414

Armistead W. Sapp, of Greensboro, N. C. (Oscar L. Sapp, of Greensboro, N. C., on the brief), for appellant.

R. M. Robinson, of Greensboro, N. C., for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

For a number of years prior to 1930, M. W. Gant, Sr., was clerk of the superior court of Guilford county, N. C. In that year, having been found short in his accounts, he was removed from office and shortly thereafter was adjudged bankrupt. This appeal is taken from a judgment in favor of his trustees in bankruptcy in an action to recover on the bond of $5,000 executed by his son M. W. Gant, Jr., who was deputy clerk under him from March 9, 1929 to October 9, 1930.

The pertinent portions of the bond sued on are as follows:

"The Fidelity and Casualty Company of New York, hereinafter called the surety, does hereby agree to indemnify Mason William Gant, Sr.,—Clerk Superior Court of Greensboro, North Carolina, hereinafter called the employer, against the loss, not exceeding five thousand ($5,000.00) dollars, of any money or other personal property (including moneys or other personal property for which the employer is responsible) through the embezzlement, larceny, forgery, theft, wrongful abstraction or any other act of fraud or dishonesty of Mason William Gant, Jr., hereinafter called the employee, directly or in connivance with others, while the employee is engaged in the service of the employer, while this bond is in force.

"The foregoing agreement is subject to the following conditions: * * *

"3. In the event of the death of the employee during the term of this bond, or of his suspension, dismissal, or retirement from the service of the employer during the said term, this bond shall thereupon terminate without any action on the part of the surety. The right to make a claim hereunder shall cease at the end of six months after the termination, expiration, or cancellation of this bond.

"4. Upon the discovery by the employer of any dishonest act on the part of the employee the employer shall, at the earliest practicable moment, and at all events not later than five days after such discovery, give written notice thereof addressed to the surety at its home office. * * *

"5. Upon the discovery by the employer of any dishonest act on the part of the employee this bond shall terminate, without any action on the part of the surety, as to any act committed thereafter by such employee."

Plaintiffs relied upon evidence as to withdrawal of funds from the clerk's office by M. W. Gant, Jr., between April 23, 1929, and September 12, 1930. While the evidence was conflicting as to the nature of some of the withdrawals, there is no question but that M.

W. Gant, Sr., was thoroughly acquainted with what was going on and that most, if not all, of the improper withdrawals were made under his direction. The auditor employed to check the records in the clerk's office did not discover the irregularities in the withdrawals, however, until October, 1931; and no notice thereof was given the bonding company or claim made under the bond until October 23, 1931. At the conclusion of the evidence the defendant moved for judgment as of nonsuit under the North Carolina statute (see C. S. § 567); and we think that the motion should have been allowed (1) because under the circumstances disclosed by the evidence M. W. Gant, Sr., is precluded from recovery under the bond and plaintiffs have no greater rights than he, and (2) because the evidence shows that no demand was made on the company within six months after the service of M. W. Gant, Jr., had been terminated.

It needs neither argument nor citation of authority to sustain the proposition that M. W. Gant, Sr., would not be allowed to recover on the bond. Not only did he not give the notice which the bond required, but he was a party to the acts complained of and is precluded from recovery by the salutary rule that the law will not allow one to profit by his own wrong. His trustees in bankruptcy, as such, have no greater rights. Zartman, Trustee, v. First National Bank, 216 U. S. 134, 30 S. Ct. 368, 54 L. Ed. 418; Remington on Bankruptcy, vol. 4, § 1409. And even if they be held to be vested with the rights of the claimants of funds wrongfully abstracted from the clerk's office, and entitled for this reason to enforce for the benefit of such claimants obligations running in favor of M. W. Gant, Sr., individually, they would still have no greater rights than he; for they would necessarily enforce such obligations on the theory of subrogation and would be concluded by whatever would conclude him. Only on the theory that the bond was given for the protection of the public and not of Gant, Sr., individually, could the trustees have rights under it greater than he; and recovery on this theory cannot be sustained, for it is clear that the bond was given to protect him and not the public.

The clerk is required to give bond for the faithful discharge of his duties and to account for all moneys which may come into his hands by virtue of his office. C. S. § 927. And suits upon such bond, as upon other official bonds, run in the name of the state. C. S. § 354. The clerk is allowed to appoint deputies (C. S. § 935), and is responsible for their acts. C. S. § 937. No statute requires any bond of a deputy clerk; but, as the clerk is liable for the defaults and misfeasance of his deputies, common prudence dictates that he require bonds of them for his own protection. Such a bond, not being required by law, is not an official bond in the strict sense of that term. See 46 C. J. 1063. When given, however, it is valid as a common-law bond, the clerk individually, and not the public, being the obligee in interest thereunder. The fact that it runs in the name of the clerk as clerk is immaterial. Loeser v. Alexander (C. C. A. 6th) 176 F. 265, 269.

The question as to the nature of such a bond was before the Circuit Court of Appeals of the Sixth Circuit in the case last cited. The question was raised there as to the right of a county treasurer, to whom a bond had been given by a deputy, to prove a claim on the bond against the bankrupt estate of the deputy. The court, speaking through Judge Knappen said:

"The first of these objections is that the bond in question is a public bond; that it runs to the county treasurer as such, and is for the benefit of the county; and that Alexander individually had thus no interest as obligee in the bond, and so could not recover upon it. In our judgment, Alexander is the party in interest as obligee in the bond. By section 1080 of the Revised Statutes of Ohio, the county treasurer is required to give a bond approved by the county commissioners, payable to the state, and conditioned for 'paying over, according to law, all moneys which come into his hands for state, county, township or other purposes.' This bond is suable only in the name of the state. Hunter v. Commissioners, 10 Ohio St. 515. The Ohio statutes contain no express authority for appointing deputy collectors under that name; but, as was held by this court in Board of Commissioners v. Strawn, supra [157 F. 49, 15 L. R. A. (N. S.) 1100], the treasurer had the undoubted power to appoint Blyth a deputy for the purposes of making the collections in question. By section 1089 of the Revised Statutes of Ohio, express authority is given the county treasurer to appoint 'one or more deputies,' and it is expressly provided that the treasurer himself 'shall, in all cases, be liable and accountable for the proceedings and misconduct in office of his deputies.' The position of Blyth was, in a very proper sense, that of a deputy of the county treasurer, at least for the pur-

poses of the collections in question. Section 1090 makes express provision for the receiving of and receipting for taxes by the deputy treasurer. The statute providing for the appointment by the treasurer of deputies makes no provision for the giving of a bond; and in State v. Meyers, 56 Ohio St., at page 348, 47 N. E. 139, reference is made to the relation between a county treasurer and his deputies in this language:

" 'The law goes no further than to authorize the treasurer, at his pleasure, to appoint one or more deputies, who hold their appointment only during the pleasure of the principal, who is answerable for the proceedings and misconduct of .the deputy, and may, for his own protection, take a bond with sureties for the faithful performance of the services required of the deputy; but the latter takes no oath of office, nor gives bond to any public authority, and is in no sense a public officer, but a mere agent of the treasurer.'

"In our opinion, the view above expressed of the relations between the county treasurer and his deputy is the correct one; and, in our judgment, those considerations pertain equally to Blyth's relation toward his principal. We have no hesitation in holding that the bond in question was a valid common-law bond; that it was not a public bond, but was given for the sole benefit of claimant, and that he is the real obligee in interest therein. The fact that it runs to claimant 'as county treasurer' is not inconsistent with such construction."

█ It will be noted that the bond in suit runs, not to the state of North Carolina, but to M. W. Gant, Sr., clerk of the superior court. It does not guarantee the faithful performance of duty by the deputy or provide that he shall faithfully account for moneys intrusted to him, but agrees to indemnify Gant, Sr., the clerk, against loss resulting from embezzlement, larceny, forgery, theft, wrongful abstraction, or any other act of fraud or dishonesty on the part of the deputy. To justify recovery under its terms, it must be shown that Gant, Sr., has sustained loss from the acts insured against. Those entitled to funds intrusted to Gant, Sr., and embezzled by Gant, Jr., would have the right to proceed against Gant, Sr., and, as incidental to that right, to proceed in equity by way of subrogation to enforce the obligation indemnifying him from loss from such embezzlement, where it appeared that he was insolvent and collection could not be made

from him. See Keller v. Ashford, 133 U. S. 610, 624, 10 S. Ct. 494, 33 L. Ed. 667. But in such proceeding they would necessarily proceed by way of subrogation and would have no greater rights than Gant, Sr., would have had.

█ And we think that upon the evidence the trustees should have been nonsuited on the further ground that the employment covered by the bond terminated on October 9, 1930, and that no claim was made upon the company within six months thereafter, as required by the third condition of liability quoted above. It is contended that the misfeasance of Gant, Jr. was not discovered by the auditor employed to check the clerk's office until October, 1931; but as we have seen above, the misfeasance was known to Gant, Sr., and whatever would bar him would bar the plaintiffs here. And in addition to this, we do not think that ignorance of the default, even by those protected by the bond, makes any difference. The company had a right, in the absence of statute to the contrary, to prescribe any conditions to its liability that it saw fit to prescribe; and, in addition to requiring immediate notice of any dishonest act discovered, it provided that the right to make a claim under the policy should cease at the expiration of six months after the termination of the bond. This was equivalent to limiting the period within which discovery of default might be made, as such discovery must necessarily precede the making of a claim. American Surety Co. v. Pauly, 170 U. S. 133, 149, 18 S. Ct. 552, 42 L. Ed. 977. And it is well settled that provisions limiting the period within which discovery of default must be made as a condition of liability under the bond are valid and will be enforced. American Surety Co. v. Pauly, supra; Id., 170 U. S. 160, 18 S. Ct. 563, 42 L. Ed. 987; Thompson v. American Surety Co. (C. C. A. 8th) 42 F. (2d) 953; Proctor Coal Co. v. U. S. F. & G. Co. (C. C.) 124 F. 424. And this is true although discovery of the default was prevented by a falsification of employee's books (Fidelity & Casualty Co. v. Consolidated Nat. Bank [C. C. A. 3d] 71 F. 116), or by other means taken to conceal it. Larrabee Title Guaranty & Surety Co., 250 Pa. 135, 95 A. 416, L. R. A. 1916F, 709. And see 25 C. J. 1097 and note in 43 A. L. R. at pages 994, 995.

A number of interesting questions are raised by the appeal which it is unnecessary to discuss. In the view which we take, the

trustees in bankruptcy were not entitled to recover under the evidence on any possible theory of the case, and the motion to nonsuit should have been allowed.

Reversed.